UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-1791

DANNY ROWELL,

            Plaintiff - Appellant,

      v.

CITY OF HICKORY; T. E. HUNT,

            Defendants - Appellees.

Appeal from the United States District Court for the Western District of North Carolina, at Statesville.  Dennis L. Howell, Magistrate Judge.  (5:07-cv-00075-DLH)

Argued:  May 13, 2009                Decided:  August 27, 2009

Before NIEMEYER, Circuit Judge, C. Arlen BEAM, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation, and Joseph F. ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Phyllis Lile-King, PINTO, COATES, KYRE & BROWN, PLLC, Greensboro, North Carolina, for Appellant.  Patrick Houghton Flanagan, CRANFILL, SUMNER & HARTZOG, LLP, Charlotte, North Carolina, for Appellees.  **ON BRIEF:** Bradley P. Kline, CRANFILL, SUMNER & HARTZOG, LLP, Charlotte, North Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This is an appeal of a grant of summary judgment in a lawsuit seeking damages arising out of an allegedly unconstitutional arrest. The defendants below, who are the appellees here, are the City of Hickory, North Carolina, and one of its police officers, named in his official capacity. The lower court granted summary judgment to the City of Hickory on several grounds, one of which was that the appellant, Danny Rowell ("Rowell"), failed to present evidence that his allegedly unconstitutional arrest was the result of the implementation of an official policy, custom, or practice of the City of Hickory. Because this conclusion is sound, we affirm.

I.

Rowell met a gentleman named Ronald Eddings while on a business trip in Hickory in December of 2004. The two apparently met at the hotel where Rowell was staying and spent the day drinking beer in and around the hotel. After they exhausted the initial supply of beer, the two men took Rowell's car to purchase more. According to Rowell, he allowed Eddings to drive the car because he (Rowell) felt it imprudent to drive after drinking. After the two men returned from purchasing beer, Eddings asked to borrow Rowell's car. Rowell agreed, but on the condition that he come along while Eddings drove.

2

The parties present different versions of what happened next. Officer T.E. Hunt of the Hickory police department avers that he observed Rowell's car traveling in the wrong lane of the road and that he had to quickly maneuver his police car in order to avoid a head-on collision with Rowell's car. Officer Hunt alleges that he then turned his police car around, activated his traffic lights, and initiated a traffic stop. Rowell contends that Officer Hunt's version of events is not accurate. According to Rowell, Eddings was not operating the car in an unusual manner. Rowell contends that the two men noticed a police car following behind them and that Officer Hunt initiated the traffic stop after Eddings turned into a parking lot.

There is also some dispute about what happened during the traffic stop, but none of it appears to be material. After Officer Hunt approached the car, Eddings informed the officer that he did not have a valid driver's license. Officer Hunt arrested Eddings after verifying this information. After securing Eddings in the police car, Officer Hunt returned to question Rowell, who by all accounts had not behaved unusually during any portion of the traffic stop. After Rowell informed Officer Hunt that he owned the car, Officer Hunt placed Rowell under arrest for aiding and abetting the unlicensed operation of a motor vehicle.

After securing Rowell in the police car, Officer Hunt conducted a search of Rowell's vehicle. In the search, Officer Hunt discovered a small amount of a hard, white substance which Officer Hunt attested to believing, based on his knowledge, experience, and training, to be cocaine base; commonly known as "crack" cocaine. Officer Hunt confronted Rowell with the suspected contraband and Rowell claims to have declared that it was not cocaine base and that he had no drugs in the vehicle. Officer Hunt seized the suspected controlled substance and took both Eddings and Rowell before a magistrate. The magistrate determined that Rowell's arrests for the traffic violation and for possession of a controlled substance were supported by probable cause. R.O.A. 750.[1]

It is around this point that the timeline of this case took an unfortunate turn. Rowell posted bond the morning after his arrest, but lost his job shortly thereafter as a result of the arrest. R.O.A. 329, 333. Although Rowell had a relatively quickly scheduled preliminary date in court, the case was continued several times. Rowell was appointed a public defender. R.O.A. 337. It appears that in February of 2005,

---

[1] We granted appellant leave to use the original record on appeal. Citations in this opinion will therefore sometimes be to the record on appeal ("R.O.A."), and at other times be to the joint appendix ("J.A."). J.A. 47.

Rowell believed the matter to be closed and decided to move to Virginia. R.O.A. 341. The matter was not closed, however, and in April of 2005, which was about four months after Rowell's arrest, a grand jury in North Carolina returned an indictment charging Rowell with aiding and abetting the unlicensed operation of a motor vehicle and with possession of cocaine. R.O.A. 766. When Rowell was thereafter arrested in Virginia in connection with what appears to have been a minor fracas at a bar, the Virginia police discovered the pending North Carolina charges. R.O.A. 348. While awaiting extradition to North Carolina, Rowell spent about twenty days in a Virginia jail. R.O.A. 352. Rowell spent about thirty additional days in jail after he returned to North Carolina before he could post bond. R.O.A. 355. Rowell secured a different public defender, and the case was set for trial in January of 2006. R.O.A. 356-58. Rowell hired an attorney shortly before his trial date, the case was continued again, and Rowell's attorney eventually phoned him in the Spring of 2006 to tell him that the charges had been dismissed. R.O.A. 359, 361. The dismissal came about because a laboratory report issued by the North Carolina State Bureau of Investigation concluded that the suspected cocaine seized from Rowell's car was in fact aspirin. R.O.A. 12, 14.

Rowell filed this lawsuit in May of 2007, J.A. 5, and the defendants removed the case to federal court, J.A. 1. Spelled

out in seven causes of action, Rowell's complaint contended that the stop of his car was without probable cause; that the search of the car was unreasonable; that Rowell's criminal charges were not supported by probable cause; that false evidence was presented to the North Carolina grand jury; that Rowell was extradited from Virginia without probable cause; and that the defendants were negligent in failing to reasonably investigate Rowell's criminal charges. J.A. 8-13. Rowell contended that these actions gave rise to liability in damages under 42 U.S.C. § 1983 (for violations of his Fourth and Fourteenth Amendment rights), and under North Carolina's common law. Id.

By the parties' consent, the case came before a magistrate judge on cross-motions for summary judgment. Noting that a lawsuit against a municipal employee "in his official capacity" is a suit against the municipality, the magistrate dismissed the claims against Officer Hunt as "redundant." J.A. 21. The magistrate then granted summary judgment to the City of Hickory on the grounds that Rowell's evidence did not show any deficiency in the city's training, policies, and practices in operating its police department. J.A. 30. Along the way, the magistrate excluded a portion of Rowell's expert's testimony and concluded that Officer Hunt's stop of the car, Rowell's arrest, and the search of the car were supported by probable cause. The magistrate similarly disposed of Rowell's state-law claims;

6

finding that a claim for false imprisonment does not lie when the complained-of imprisonment is an arrest supported by probable cause. J.A. 41. This appeal followed.

## II.

We review a grant of summary judgment *de novo*. CACI Intern., Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 155 (4th Cir. 2009).

Rowell raises six issues on appeal, contending that the magistrate erred in adopting Officer Hunt's version of the facts in resolving the probable cause questions; in excluding the testimony of Rowell's offered expert; in concluding that the stop and arrest were supported by probable cause; and in concluding that the City of Hickory did not have an unconstitutional policy, custom, or practice. If Rowell is wrong on this last point — that is, if the magistrate was correct in concluding that there is no evidence in this case of a policy, practice, or custom of the City of Hickory which caused a deprivation of Rowell's constitutional rights — the other questions Rowell raises are academic matters. We conclude that Rowell is wrong on the point and we therefore do not address his remaining contentions.

"Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . .

7

the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Serv. of the City of N.Y., 436 U.S. 658, 690 (1978). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor . . . in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Id. at 691 (emphasis in original). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. "[T]he inadequacy of police training may serve as the basis for § 1983 liability," but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989).

At trial, Rowell focused on what he contended was Hickory police department's policy of arresting individuals for drug offences without confirming that what the officer suspects is drugs is in fact drugs. Appellee's Brief at 30. Rowell contended that the failure to confirm the presence of a controlled substance, in the circumstances of his arrest, amounted to the arrest lacking probable cause. As Rowell sees

8

it, "where the policy of the department is to not require field testing, which arguably would always provide the threshold probable cause for an arrest, the department bears that much more responsibility for training and procedures that assure probable cause supports its arrests."  Id. at 31.

In City of Canton, the case which provides the standard for this type of liability, the court spoke of the "deliberate indifference" a municipality must show towards the constitutional rights of others, and the court described such indifference through specific examples.  One example noted in that case was a policy of vesting shift commanders with the sole discretion to determine when an individual in police custody needed medical attention.  By vesting the commanders with this discretion, the argument went that the municipality had a duty to provide the shift commanders with some medical instruction to guide them in making those decisions.  489 U.S. at 381-82. Another example was a city's providing of firearms to its officers.  When a city does so, the court recognized the city's duty to train officers in the constitutional limitations on the use of deadly force.  Id. at 390 n.10.  In both examples the court focused on specific types of discretion entrusted to municipal employees, the municipality's need to train its employees in exercising that discretion, and the harm of not providing such training.

9

Rowell's claim is of a different sort. The City of Hickory gave Officer Hunt the power to arrest individuals for drug offences, but there is no dispute that Officer Hunt received instruction in constitutional law, including the requirement that an arrest be supported by probable cause, and in identifying controlled substances. Rowell simply contends that Officer Hunt's training didn't sink in. We have been instructed, however, that the fact "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." Id. at 390-91. Rowell does not point to specific deficiencies in the Basic Law Enforcement Training Course Officer Hunt completed at community college, nor does he point to deficient aspects of Officer Hunt's field training during his period of probationary employment with the City of Hickory. His claim is that Officer Hunt did not understand the concept of probable cause, that he inaccurately identified a tablet of aspirin as cocaine, and that because the City of Hickory put him on patrol, the City of Hickory is responsible. This is exactly the type of case City of Canton noted would not measure up.

Rowell also fails to allege how providing additional training would have made a difference in these circumstances. The only evidence we have in this case is that in the course of

10

a search incident to an arrest, Officer Hunt discovered a substance which he attested to believing, based on his knowledge, training, and experience, to be cocaine base. Although Officer Hunt's belief turned out to be inaccurate, Rowell has not pointed us to how the City of Hickory caused Officer Hunt's analysis to be flawed or unreasonable, and Rowell has not provided other examples of similar police encounters in the City of Hickory which might be fairly said to put the city on notice that its police officers made a habit of incorrectly identifying benign substances as illegal drugs. In short, there is nothing suggesting that the city can be fairly said to have been "deliberately indifferent" to the constitutional rights of its citizens. Rowell simply posits that if the police department does not have a policy of field testing, it needs to train its officers to identify controlled substances with more accuracy. This proposition is not persuasive. We have been instructed that "adequately trained officers occasionally make mistakes," and "the fact that they do says little about the training program or the legal basis for holding the city liable." Id. at 391.

Rowell's attempt to hamstring the city into liability by citing to statements by Officer Hunt and his supervisor that the arrest was "textbook" and "in conformance with official policy" do not help the case meet this threshold. Officer Hunt thought

11

the arrest was "textbook" because he believed the arrest to be supported by probable cause. This belief was apparently shared by Hunt's supervisor and the magistrate who performed the post-arrest hearing. Rowell's argument along these lines is flatly rejected by City of Canton, which noted that municipal liability "will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible." Id. at 389. Rowell has not presented a claim in the mold of what the City of Canton concurring opinion termed a "failure to train concerning a clear constitutional duty" or a failure to train "where it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations involving the exercise of police discretion." Id. at 396-97. Any offered parallel for this standard of liability and Rowell's theory of this case simply does not hold.

Two matters of housekeeping warrant quick mentioning. The first is that at oral argument, Rowell shifted gears on his theory of the case completely and argued that the unconstitutional police policy or custom in this case was to conduct a search of a suspect's vehicle after the suspect had been arrested and secured in a police car; a clear violation of the Fourth Amendment in light of the recent decision in Arizona v. Gant, No. 07-542 (U.S. Apr. 21, 2009). There are many

12

problems with this argument.  The most important is that it was not presented below, and as a legal matter, the argument is therefore waived.  See Malbon v. Pa. Millers Mut. Ins. Co., 636 F.2d 936, 941 (4th Cir. 1980) ("It is elementary that an issue not raised below will not, absent extraordinary circumstances . . . be considered on appeal.").  As a practical matter, the fact that it was not presented below represents why the record is not developed at all on the point.  There is no evidence of the City of Hickory's policy on training regarding searches incident to arrest and no characterizations and findings as to the city's actions in this area by a lower court.  Indeed, the briefing in this case contains no citations to Gant or discussion of what Hickory's policy on automobile searches incident to an arrest may have been.  A remand would give Rowell the opportunity to develop a record on the point, but Rowell cannot shift gears while his case is on appeal to take advantage of a new theory of liability that he did not assert below.

The second housekeeping matter is one of, for lack of a better word, contrition.  We ought to acknowledge that although Rowell has presented no evidence that a policy of the City of Hickory caused a violation of his constitutional rights, the system did not act expediently in his case.  When all is said and done, this case may stand for the proposition that although an arrest and indictment be supported by probable cause, they

13

may also be founded on a genuine mistake.  It took a long time for the criminal justice system to validate Rowell's protest that the substance seized from his car was not drugs, but this can hardly be said to be the City of Hickory's fault.  In this appeal, we are concerned solely with the City of Hickory's liability in damages for its role in these circumstances.  Though the timeliness of the system may have failed Rowell, he has not shown how a policy or custom of the City of Hickory caused a violation of his constitutional rights.

For the foregoing reasons, the grant of summary judgment to the defendants is

AFFIRMED.