*335 Justice Stevens
delivered the opinion of the Court.
After Rodney Gant was arrested for driving with a suspended license, handcuffed, and locked in the back of a patrol car, police officers searched his car and discovered cocaine in the pocket of a jacket on the backseat. Because Gant could not have accessed his ear to retrieve weapons or evidence at the time of the search, the Arizona Supreme Court held that the search-incident-to-arrest exception to the Fourth Amendment’s warrant requirement, as defined in Chimel v. California, 395 U. S. 752 (1969), and applied to vehicle searches in New York v. Belton, 453 U. S. 454 (1981), did not justify the search in this case. We agree with that conclusion.
Under Chimel, police may search incident to arrest only the space within an arrestee’s “ ‘immediate control,’ ” meaning “the area from within which he might gain possession of a weapon or destructible evidence.” 395 U. S., at 763. The safety and evidentiary justifications underlying Chimel's reaching-distance rule determine Belton's scope. Accordingly, we hold that Belton does not authorize a vehicle search incident to a recent occupant’s arrest after the arrestee has been secured and cannot access the interior of the vehicle. Consistent with the holding in Thornton v. United States, 541 U. S. 615 (2004), and following the suggestion in Justice Scalia’s opinion concurring in the judgment in that case, id., at 632, we also conclude that circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle.
I
On August 25, 1999, acting on an anonymous tip that the residence at 2524 North Walnut Avenue was being used to sell drugs, Tucson police officers Griffith and Reed knocked on the front door and asked to speak to the owner. Gant answered the door and, after identifying himself, stated that *336 he expected the owner to return later. The officers left the residence and conducted a records check, which revealed that Gant’s driver’s license had been suspended and there was an outstanding warrant for his arrest for driving with a suspended license.
When the officers returned to the house that evening, they found a man near the back of the house and a woman in a car parked in front of it. After a third officer arrived, they arrested the man for providing a false name and the woman for possessing drug paraphernalia. Both arrestees were handcuffed and secured in separate patrol cars when Gant arrived. The officers recognized his car as it entered the driveway, and Officer Griffith confirmed that Gant was the driver by shining a flashlight into the car as it drove by him. Gant parked at the end of the driveway, got out of his car, and shut the door. Griffith, who was about 30 feet away, called to Gant, and they approached each other, meeting 10-to-12 feet from Gant’s car. Griffith immediately arrested Gant and handcuffed him.
Because the other arrestees were secured in the only patrol cars at the scene, Griffith called for backup. When two more officers arrived, they locked Gant in the backseat of their vehicle. After Gant had been handcuffed and placed in the back of a patrol car, two officers searched his car: One of them found a gun, and the other discovered a bag of cocaine in the pocket of a jacket on the backseat.
Gant was charged with two offenses — possession of a narcotic drug for sale and possession of drug paraphernalia (1 e., the plastic bag in which the cocaine was found). He moved to suppress the evidence seized from his car on the ground that the warrantless search violated the Fourth Amendment. Among other things, Gant argued that Belton did not authorize the search of his vehicle because he posed no threat to the officers after he was handcuffed in the patrol car and because he was arrested for a traffic offense for which no evidence could be found in his vehicle. When asked at the *337 suppression hearing why the search was conducted, Officer Griffith responded: “Because the law says we can do it.” App. 75.
The trial court rejected the State’s contention that the officers had probable cause to search Gant’s car for contraband when the search began, id., at 18, 30, but it denied the motion to suppress. Relying on the fact that the police saw Gant commit the crime of driving without a license and apprehended him only shortly after he exited his ear, the court held that the search was permissible as a search incident to arrest. Id., at 37. A jury found Gant guilty on both drug counts, and he was sentenced to a 3-year term of imprisonment.
After protracted state-court proceedings, the Arizona Supreme Court concluded that the search of Gant’s car was unreasonable within the meaning of the Fourth Amendment. The court’s opinion discussed at length our decision in Belton, which held that police may search the passenger compartment of a vehicle and any containers therein as a contemporaneous incident of an arrest of the vehicle’s recent occupant. 216 Ariz. 1, 3-4, 162 R 3d 640, 642-643 (2007) (citing 453 U. S., at 460). The court distinguished Belton as a case concerning the permissible scope of a vehicle search incident to arrest and concluded that it did not answer “the threshold question whether the police may conduct a search incident to arrest at all once the scene is secure.” 216 Ariz., at 4, 162 R 3d, at 643. Relying on our earlier decision in Chimel, the court observed that the search-ineident-toarrest exception to the warrant requirement is justified by interests in officer safety and evidence preservation. 216 Ariz., at 4,162 P. 3d, at 643. When “the justifications underlying Chimel no longer exist because the scene is secure and the arrestee is handcuffed, secured in the back of a patrol ear, and under the supervision of an officer,” the court concluded, a “warrantless search of the arrestee’s car cannot be justified as necessary to protect the officers at the scene or *338 prevent the destruction of evidence.” Id., at 5,162 P. 3d, at 644. Accordingly, the court held that the search of Gant’s ear was unreasonable.
The dissenting justices would have upheld the search of Gant's car based on their view that “the validity of a Belton search . . . clearly does not depend on the presence of the Chimel rationales in a particular case.” Id., at 8, 162 P. 3d, at 647. Although they disagreed with the majority’s view of Belton, the dissenting justices acknowledged that “[t]he bright-line rule embraced in Belton has long been criticized and probably merits reconsideration.” 216 Ariz., at 10, 162 P. 3d, at 649. They thus “add[ed their] voice[s] to the others that have urged the Supreme Court to revisit Belton.” Id., at 11, 162 P. 3d, at 650.
The chorus that has called for us to revisit Belton includes courts, scholars, and Members of this Court who have questioned that decision’s clarity and its fidelity to Fourth Amendment principles. We therefore granted the State’s petition for certiorari. 552 U. S. 1230 (2008).
II
Consistent with our precedent, our analysis begins, as it should in every case addressing the reasonableness of a warrantless search, with the basic rule that “searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.” Katz v. United States, 389 U. S. 347, 357 (1967) (footnote omitted). Among the exceptions to the warrant requirement is a search incident to a lawful arrest. See Weeks v. United States, 232 U. S. 383, 392 (1914). The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations. See United States v. Robinson, 414 U. S. 218, 230-234 (1973); Chimel, 395 U. S., at 763.
*339 In Chimel, we held that a search incident to arrest may only include “the arrestee’s person and the area ‘within his immediate control’ — construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.” Ibid. That limitation, which continues to define the boundaries of the exception, ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy. See ibid, (noting that searches incident to arrest are reasonable “in order to remove any weapons [the arrestee] might seek to use” and “in order to prevent [the] concealment or destruction” of evidence (emphasis added)). If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply. E. g., Preston v. United States, 376 U. S. 364, 367-368 (1964).
In Belton, we considered ChimeVs application to the automobile context. A lone police officer in that case stopped a speeding car in which Belton was one of four occupants. While asking for the driver’s license and registration, the officer smelled burnt marijuana and observed an envelope on the car floor marked “Supergold” — a name he associated with marijuana. Thus having probable cause to believe the occupants had committed a drug offense, the officer ordered them out of the vehicle, placed them under arrest, and patted them down. Without handcuffing the arrestees,[1] the officer “ ‘split them up into four separate areas of the Thruway ... so they would not be in physical touching area of each other’ ” and searched the vehicle, including the pocket of a jacket on the backseat, in which he found cocaine. 453 U. S., at 456.
*340 The New York Court of Appeals found the search unconstitutional, concluding that after the occupants were arrested the vehicle and its contents were “safely within the exclusive custody and control of the police.” State v. Belton, 50 N. Y. 2d 447, 452, 407 N. E. 2d 420, 423 (1980). The State asked this Court to consider whether the exception recognized in Chimel permits an officer to search “a jacket found inside an automobile while the automobile’s four occupants, all under arrest, are standing unsecured around the vehicle.” Brief in No. 80-328, p. i. We granted certiorari because “courts ha[d] found no workable definition of ‘the area within the immediate control of the arrestee’ when that area arguably includes the interior of an automobile.” 453 U. S., at 460.
In its brief, the State argued that the Court of Appeals erred in concluding that the jacket was under the officer’s exclusive control. Focusing on the number of arrestees and their proximity to the vehicle, the State asserted that it was reasonable for the officer to believe the arrestees could have accessed the vehicle and its contents, making the search permissible under Chimel. Brief in No. 80-328, at 7-8. The United States, as amicus curiae in support of the State, argued for a more permissive standard, but it maintained that any search incident to arrest must be “ ‘substantially contemporaneous’ ” with the arrest — a requirement it deemed “satisfied if the search occurs during the period in which the arrest is being consummated and before the situation has so stabilized that it could be said that the arrest was completed.” Brief for United States as Amicus Curiae in New York v. Belton, O. T. 1980, No. 80-328, p. 14. There was no suggestion by the parties or amici that Chimel authorizes a vehicle search incident to arrest when there is no realistic possibility that an arrestee could access his vehicle.
After considering these arguments, we held that when an officer lawfully arrests “the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the *341 passenger compartment of the automobile” and any containers therein. Belton, 453 U. S., at 460 (footnote omitted). That holding was based in large part on our assumption “that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within ‘the area into which an arrestee might reach.’ ” Ibid.
The Arizona Supreme Court read our decision in Belton as merely delineating “the proper scope of a search of the interior of an automobile” incident to an arrest, id., at 459. That is, when the passenger compartment is within an arrestee’s reaching distance, Belton supplies the generalization that the entire compartment and any containers therein may be reached. On that view of Belton, the state court concluded that the search of Gant’s car was unreasonable because Gant clearly could not have accessed his car at the time of the search. It also found that no other exception to the warrant requirement applied in this case.
Gant now urges us to adopt the reading of Belton followed by the Arizona Supreme Court.
Ill
Despite the textual and evidentiary support for the Arizona Supreme Court’s reading of Belton, our opinion has been widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search. This reading may be attributable to Justice Brennan’s dissent in Belton, in which he characterized the Court’s holding as resting on the “fiction... that the interior of a car is always within the immediate control of an arrestee who has recently been in the car.” Id., at 466. Under the majority’s approach, he argued, “the result would presumably be the same even if [the officer] had handcuffed Belton and his companions in the patrol car” before conducting the search. Id., at 468.
*342 Since we decided Belton, Courts of Appeals have given different answers to the question whether a vehicle must be within an arrestee’s reach to justify a vehicle search incident to arrest,[2] but Justice Brennan’s reading of the Court’s opinion has predominated. As Justice O’Connor observed, “lower court decisions seem now to treat the ability to search a vehicle incident to the arrest of a recent occupant as a police entitlement rather than as an exception justified by the twin rationales of Chimel.” Thornton, 541 U. S., at 624 (opinion concurring in part). Justice Scalia has similarly noted that, although it is improbable that an arrestee could gain access to weapons stored in his vehicle after he has been handcuffed and secured in the backseat of a patrol car, cases allowing a search in “this precise factual scenario . . . are legion.” Id., at 628 (opinion concurring in judgment) (collecting cases).[3] Indeed, some courts have upheld searches *343 under Belton “even when . . . the handcuffed arrestee has already left the scene.” 541 U. S., at 628 (same).
Under this broad reading of Belton, a vehicle search would be authorized incident to every arrest of a recent occupant notwithstanding that in most cases the vehicle’s passenger compartment will not be within the arrestee’s reach at the time of the search. To read Belton as authorizing a vehicle search incident to every recent occupant’s arrest would thus untether the rule from the justifications underlying the Chimel exception — a result clearly incompatible with our statement in Belton that it “in no way alters the fundamental principles established in the Chimel case regarding the basic scope of searches incident to lawful custodial arrests.” 453 U. S., at 460, n. 3. Accordingly, we reject this reading of Belton and hold that the Chimel rationale authorizes police to search a vehicle incident to a recent occupant’s arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.[4]
Although it does not follow from Chimel, we also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is “reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.” Thornton, 541 U. S., at 632 (Scalia, J., concurring in judgment). In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. See, e. g., Atwater v. Lago Vista, 532 U. S. 318, *344 324 (2001); Knowles v. Iowa, 525 U. S. 113, 118 (1998). But in others, including Belton and Thornton, the offense of arrest will supply a basis for searching the passenger compartment of an arrestee’s vehicle and any containers therein.
Neither the possibility of access nor the likelihood of discovering offense-related evidence authorized the search in this case. Unlike in Belton, which involved a single officer confronted with four unsecured arrestees, the five officers in this case outnumbered the three arrestees, all of whom had been handcuffed and secured in separate patrol cars before the officers searched Gant’s car. Under those circumstances, Gant clearly was not within reaching distance of his car at the time of the search. An evidentiary basis for the search was also lacking in this case. Whereas Belton and Thornton were arrested for drug offenses, Gant was arrested for driving with a suspended license — an offense for which police could not expect to find evidence in the passenger compartment of Gant’s car. Cf. Knowles, 525 U. S., at 118. Because police could not reasonably have believed either that Gant could have accessed his car at the time of the search or that evidence of the offense for which he was arrested might have been found therein, the search in this case was unreasonable.
IV
The State does not seriously disagree with the Arizona Supreme Court’s conclusion that Gant could not have accessed his vehicle at the time of the search, but it nevertheless asks us to uphold the search of his vehicle under the broad reading of Belton discussed above. The State argues that Belton searches are reasonable regardless of the possibility of access in a given case because that expansive rule correctly balances law enforcement interests, including the interest in a bright-line rule, with an arrestee’s limited privacy interest in his vehicle.
For several reasons, we reject the State’s argument. First, the State seriously undervalues the privacy interests *345 at stake. Although we have recognized that a motorist’s privacy interest in his vehicle is less substantial than in his home, see New York v. Class, 475 U. S. 106, 112-113 (1986), the former interest is nevertheless important and deserving of constitutional protection, see Knowles, 525 U. S., at 117. It is particularly significant that Belton searches authorize police officers to search not just the passenger compartment but every purse, briefcase, or other container within that space. A rule that gives police the power to conduct such a search whenever an individual is caught committing a traffic offense, when there is no basis for believing evidence of the offense might be found in the vehicle, creates a serious and recurring threat to the privacy of countless individuals. Indeed, the character of that threat implicates the central concern underlying the Fourth Amendment — the concern about giving police officers unbridled discretion to rummage at will among a person’s private effects.[5]
At the same time as it undervalues these privacy concerns, the State exaggerates the clarity that its reading of Belton provides. Courts that have read Belton expansively are at odds regarding how close in time to the arrest and how prox *346 imate to the arrestee’s vehicle an officer’s first contact with the arrestee must be to bring the encounter within Belton’s purview[6] and whether a search is reasonable when it commences or continues after the arrestee has been removed from the scene.[7] The rule has thus generated a great deal of uncertainty, particularly for a rule touted as providing a “bright line.” See 3 LaFave §7.1(c), at 514-524.
Contrary to the State’s suggestion, a broad reading of Belton is also unnecessary to protect law enforcement safety and evidentiary interests. Under our view, Belton and Thornton permit an officer to conduct a vehicle search when an arrestee is within reaching distance of the vehicle or it is reasonable to believe the vehicle contains evidence of the offense of arrest. Other established exceptions to the warrant requirement authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand. For instance, Michigan v. Long, 463 U. S. 1032 (1983), permits an officer to search a vehicle’s passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is “dangerous” and might access the vehi *347 cle to “gain immediate control of weapons.” Id., at 1049 (citing Terry v. Ohio, 392 U. S. 1, 21 (1968)). If there is probable cause to believe a vehicle contains evidence of criminal activity, United States v. Ross, 456 U. S. 798, 820-821 (1982), authorizes a search of any area of the vehicle in which the evidence might be found. Unlike the searches permitted by Justice Scalia’s opinion concurring in the judgment in Thornton, which we conclude today are reasonable for purposes of the Fourth Amendment, Ross allows searches for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader. Finally, there may be still other circumstances in which safety or evidentiary interests would justify a search. Cf. Maryland v. Buie, 494 U. S. 325, 334 (1990) (holding that, incident to arrest, an officer may conduct a limited protective sweep of those areas of a house in which he reasonably suspects a dangerous person may be hiding).
These exceptions together ensure that officers may search a vehicle when genuine safety or evidentiary concerns encountered during the arrest of a vehicle’s recent occupant justify a search. Construing Belton broadly to allow vehicle searches incident to any arrest would serve no purpose except to provide a police entitlement, and it is anathema to the Fourth Amendment to permit a warrantless search on that basis. For these reasons, we are unpersuaded by the State’s arguments that a broad reading of Belton would meaningfully further law enforcement interests and justify a substantial intrusion on individuals’ privacy.[8]
*348 V
Our dissenting colleagues argue that the doctrine of stare decisis requires adherence to a broad reading of Belton even though the justifications for searching a vehicle incident to arrest are in most cases absent.[9] The doctrine of stare decisis is of course “essential to the respect accorded to the judgments of the Court and to the stability of the law,” but it does not compel us to follow a past decision when its rationale no longer withstands “careful analysis.” Lawrence v. Texas, 539 U. S. 558, 577 (2003).
We have never relied on stare decisis to justify the continuance of an unconstitutional police practice. And we would be particularly loath to uphold an unconstitutional result in a case that is so easily distinguished from the decisions that arguably compel it. The safety and evidentiary interests that supported the search in Belton simply are not present in this case. Indeed, it is hard to imagine two cases that are factually more distinct, as Belton involved one officer confronted by four unsecured arrestees suspected of committing a drug offense, and this case involves several officers confronted with a securely detained arrestee apprehended for driving with a suspended license. This case is also distinguishable from Thornton, in which the petitioner was *349 arrested for a drug offense. It is thus unsurprising that Members of this Court who concurred in the judgments in Belton and Thornton also concur in the decision in this case.[10]
We do not agree with the contention in Justice Alito’s dissent (hereinafter dissent) that consideration of police reliance interests requires a different result. Although it appears that the State’s reading of Belton has been widely taught in police academies and that law enforcement officers have relied on the rule in conducting vehicle searches during the past 28 years,* [11] many of these searches were not justified by the reasons underlying the Chimel exception. Countless individuals guilty of nothing more serious than a traffic violation have had their constitutional right to the security of their private effects violated as a result. The fact that the law enforcement community may view the State’s version of the Belton rule as an entitlement does not establish the sort of reliance interest that could outweigh the countervailing interest that all individuals share in having their constitutional rights fully protected. If it is clear that a practice is unlawful, individuals’ interest in its discontinuance clearly outweighs any law enforcement “entitlement” to its persistence. Cf. Mincey v. Arizona, 437 U. S. 385, 393 (1978) (“[T]he mere fact that law enforcement may be made more efficient can never by itself justify disregard of the Fourth Amendment”). The dissent’s reference in this regard to the reliance interests cited in Dickerson v. United States, 530 U. S. 428 (2000), is misplaced. See post, at 358-359. In ob *350 serving that “Miranda has become embedded in routine police practice to the point where the warnings have become part of our national culture,” 530 U. S., at 443, the Court was referring not to police reliance on a rule requiring them to provide warnings but to the broader societal reliance on that individual right.
The dissent also ignores the checkered history of the search-incident-to-arrest exception. Police authority to search the place in which a lawful arrest is made was broadly asserted in Marron v. United States, 275 U. S. 192 (1927), and limited a few years later in Go-Bart Importing Co. v. United States, 282 U. S. 344 (1931), and United States v. Lefkowitz, 285 U. S. 452 (1932). The limiting views expressed in Go-Bart and Lefkowitz were in turn abandoned in Harris v. United States, 331 U. S. 145 (1947), which upheld a search of a four-room apartment incident to the occupant’s arrest. Only a year later the Court in Trupiano v. United States, 334 U. S. 699, 708 (1948), retreated from that holding, noting that the search-incident-to-arrest exception is “a strictly limited” one that must be justified by “something more in the way of necessity than merely a lawful arrest.” And just two years after that, in United States v. Rabinowitz, 339 U. S. 56 (1950), the Court again reversed course and upheld the search of an entire apartment. Finally, our opinion in Chimel overruled Rabinowitz and what remained of Harris and established the present boundaries of the search-incident-to-arrest exception. Notably, none of the dissenters in Chimel or the cases that preceded it argued that law enforcement reliance interests outweighed the interest in protecting individual constitutional rights so as to warrant fidelity to an unjustifiable rule.
The experience of the 28 years since we decided Belton has shown that the generalization underpinning the broad reading of that decision is unfounded. We now know that articles inside the passenger compartment are rarely “within 'the area into which an arrestee might reach,’ ” 453 U. S., at *351 460, and blind adherence to Belton’s faulty assumption would authorize myriad unconstitutional searches. The doctrine of stare decisis does not require us to approve routine constitutional violations.
VI
Police may search a vehicle incident to a recent occupant’s arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee’s vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies. The Arizona Supreme Court correctly held that this case involved an unreasonable search. Accordingly, the judgment of the State Supreme Court is affirmed.

It is so ordered.

 The officer was unable to handcuff the occupants because he had only one set of handcuffs. See Brief for Petitioner in New York v. Belton, O. T. 1980, No. 80-328, p. 3 (hereinafter Brief in No. 80-328).

 Compare United States v. Green, 324 F. 3d 375, 379 (CA5 2003) (holding that Belton did not authorize a search of an arrestee’s vehicle when he was handcuffed and lying facedown on the ground surrounded by four police officers 6-to-10 feet from the vehicle), United States v. Edwards, 242 F. 3d 928, 938 (CA10 2001) (finding unauthorized a vehicle search conducted while the arrestee was handcuffed in the back of a patrol car), and United States v. Vasey, 834 F. 2d 782, 787 (CA9 1987) (finding unauthorized a vehicle search conducted 30-to-45 minutes after an arrest and after the arrestee had been handcuffed and secured in the back of a police car), with United States v. Hrasky, 453 F. 3d 1099, 1102 (CA8 2006) (upholding a search conducted an hour after the arrestee was apprehended and after he had been handcuffed and placed in the back of a patrol car), United States v. Weaver, 433 F. 3d 1104, 1106 (CA9 2006) (upholding a search conducted 10-to-15 minutes after an arrest and after the arrestee had been handcuffed and secured in the back of a patrol car), and United States v. White, 871 F. 2d 41, 44 (CA6 1989) (upholding a search conducted after the arrestee had been handcuffed and secured in the back of a police cruiser).

 The practice of searching vehicles incident to arrest after the arrestee has been handcuffed and secured in a patrol car has not abated since we decided Thornton. See, e.g., United States v. Murphy, 221 Fed. Appx. 715, 717 (CA10 2007); Hrasky, 453 F. 3d, at 1100; Weaver, 433 F. 3d, at 1105; United States v. Williams, 170 Fed. Appx. 399, 401 (CA6 2006); United States v. Dorsey, 418 F. 3d 1038, 1041 (CA9 2005); United States v. *343 Osife, 398 F. 3d 1143, 1144 (CA9 2005); United States v. Sumrall, 115 Fed. Appx. 22, 24 (CA10 2004).

 Because officers have many means of ensuring the safe arrest of vehicle occupants, it will be the rare case in which an officer is unable to fully effectuate an arrest so that a real possibility of access to the arrestee’s vehicle remains. Cf. 3 W. LaFave, Search and Seizure § 7.1(c), p. 525 (4th ed. 2004) (hereinafter LaFave) (noting that the availability of protective measures “ensur[es] the nonexistence of circumstances in which the arrestee’s ‘control’ of the car is in doubt”). But in such a case a search incident to arrest is reasonable under the Fourth Amendment.

 See Maryland v. Garrison, 480 U. S. 79, 84 (1987); Chimel v. California, 395 U. S. 752, 760-761 (1969); Stanford v. Texas, 379 U. S. 476, 480-484 (1965); Weeks v. United States, 232 U. S. 383, 389-392 (1914); Boyd v. United States, 116 U. S. 616, 624-625 (1886); see also 10 C. Adams, The Works of John Adams 247-248 (1856). Many have observed that a broad reading of Belton gives police limitless discretion to conduct exploratory searches. See 3 LaFave § 7.1(c), at 527 (observing that Belton creates the risk “that police will make custodial arrests which they otherwise would not make as a cover for a search which the Fourth Amendment otherwise prohibits”); see also United States v. McLaughlin, 170 F. 3d 889, 894 (CA9 1999) (Trott, J., concurring) (observing that Belton has been applied to condone “purely exploratory searches of vehicles during which officers with no definite objective or reason for the search are allowed to rummage around in a ear to see what they might find”); State v. Pallone, 2001 WI 77, ¶¶ 87-90,236 Wis. 2d 162, 203-204, and n. 9, 613 N. W. 2d 568, 588, and n. 9 (2000) (Abrahamson, C. J., dissenting) (same); State v. Pierce, 136 N. J. 184, 211, 642 A. 2d 947, 961 (1994) (same).

 Compare United States v. Caseres, 533 F. 3d 1064, 1072 (CA9 2008) (declining to apply Belton when the arrestee was approached by police after he had exited his vehicle and reached his residence), with Rainey v. Commonwealth, 197 S. W. 3d 89, 94-95 (Ky. 2006) (applying Belton when the arrestee was apprehended 50 feet from the vehicle), and Black v. State, 810 N. E. 2d 713, 716 (Ind. 2004) (applying Belton when the arrestee was apprehended inside an auto repair shop and the vehicle was parked outside).

 Compare McLaughlin, 170 F. 3d, at 890-891 (upholding a search that commenced five minutes after the arrestee was removed from the scene), United States v. Snook, 88 F. 3d 605, 608 (CA8 1996) (same), and United States v. Doward, 41 F. 3d 789, 793 (CA1 1994) (upholding a search that continued after the arrestee was removed from the scene), with United States v. Lugo, 978 F. 2d 631, 634 (CA10 1992) (holding invalid a search that commenced after the arrestee was removed from the scene), and State v. Badgett, 200 Conn. 412, 427-428, 512 A. 2d 160, 169 (1986) (holding invalid a search that continued after the arrestee was removed from the scene).

 At least eight States have reached the same conclusion. Vermont, New Jersey, New Mexico, Nevada, Pennsylvania, New York, Oregon, and Wyoming have declined to follow a broad reading of Belton under their state constitutions. See State v. Bander, 181 Vt. 392, 401, 924 A. 2d 38, 46-47 (2007); State v. Eckel, 185 N. J. 523, 540, 888 A. 2d 1266, 1277 (2006); Camacho v. State, 119 Nev. 395, 399-400, 75 P. 3d 370, 373-374 (2003); Vasquez v. State, 990 P. 2d 476, 488-489 (Wyo. 1999); State v. Arredondo, 1997-NMCA-081, 123 N. M. 628, 636 (Ct. App.), overruled on other grounds by State v. Steinzig, 1999-NMCA-107, 127 N. M. 752 (Ct. App.); *348 Commonwealth v. White, 543 Pa. 45, 57, 669 A. 2d 896, 902 (1995); People v. Blasich, 73 N. Y. 2d 673, 678, 541 N. E. 2d 40, 43 (1989); State v. Fesler, 68 Ore. App. 609, 612, 685 P. 2d 1014, 1016-1017 (1984). And a Massachusetts statute provides that a search incident to arrest may be made only for the purposes of seizing weapons or evidence of the offense of arrest. See Commonwealth v. Toole, 389 Mass. 159, 161-162, 448 N. E. 2d 1264, 1266-1267 (1983) (citing Mass. Gen. Laws, ch. 276, § 1 (West 2006)).

 Justice Auto’s dissenting opinion also accuses us of “overruling]” Belton and Thornton v. United States, 541 U. S. 615 (2004), “even though respondent Gant has not asked us to do so.” Post, at 355. Contrary to that claim, the narrow reading of Belton we adopt today is precisely the result Gant has urged. That Justice Auto has chosen to describe this decision as overruling our earlier cases does not change the fact that the resulting rule of law is the one advocated by respondent.

 Justice Stevens concurred in the judgment in Belton, 453 U. S., at 463, for the reasons stated in his dissenting opinion in Robbins v. California, 453 U. S. 420, 444 (1981), Justice Thomas joined the Court’s opinion in Thornton, 541 U. S. 615, and Justice Scaua and Justice Ginsburg concurred in the judgment in that case, id., at 625.

 Because a broad reading of Belton has been widely accepted, the doctrine of qualified immunity will shield officers from liability for searches conducted in reasonable reliance on that understanding.