[Cite as *State v. Carr*, 2011-Ohio-2061.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

STATE OF OHIO                                  :

                                     :         Appellate Case No. 24004

         Plaintiff-Appellee                     :

                                       :         Trial Court Case No. 09-CR-3281

v.                                             :

                                       :         (Criminal Appeal from

DAMIEN CARR                                    :          Common Pleas Court)

                                       :

         Defendant-Appellant          :

                                       :

. . . . . . . . . . .

# O P I N I O N

Rendered on the 29th day of April, 2011.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
         Attorney for Plaintiff-Appellee

CARY B. BISHOP, Atty. Reg. #0077369, 79 Trial East, Pataskala, Ohio 43062
         Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Damien Carr appeals from his conviction and sentence, following a no-contest plea, on one count of Carrying a Concealed Weapon, and one count of Having a Weapon While Under a Disability. Carr contends that the trial court erred by overruling his motion to suppress evidence – a rifle – found in his car as a result of a search of

the interior of his car.

{¶ 2}   We conclude that the officer who stopped Carr, having determined that he would return Carr to his vehicle and send him on his way, was justified, under all of the surrounding circumstances, in conducting a brief search of the interior of the car for weapons. The officer had a reasonable belief that a weapon might be found in the interior of the car.

{¶ 3}   Consequently, we conclude that the trial court properly overruled Carr's motion to suppress, and the judgment of the trial court is Affirmed.

I

{¶ 4}   Trotwood Police Officer Timothy Davis was on patrol the night of October 4-5, 2009, when he received a dispatch reporting a drive-by shooting on Pittsburg Avenue in Harrison Township.   It was just before 1:00 a.m.   The report indicated that the shooter was in a silver-colored vehicle, "possibly a Saturn," but gave no other description of either the vehicle or the shooter.

{¶ 5}   Davis responded to the dispatch, even though it was outside Trotwood, as a result of a mutual aid agreement between Trotwood and Harrison Township.

{¶ 6}   About three minutes after the report, and about one mile from the scene of the shooting, Davis saw a silver-colored Toyota Camry, being driven by Carr.   Davis was asked about other traffic on the road that night:

{¶ 7}   "Q.   How many other vehicles did you encounter in that area around this time? Was there a lot of other traffic, other vehicles?

{¶ 8}   "A.   Zero.   That was the only vehicle I saw."

{¶ 9} Carr's vehicle ran a four-way stop sign, and accelerated away from Davis. Davis acknowledged that Carr might not have seen Davis. Davis effected a traffic stop, intending to investigate whether the driver of the Camry might have been involved in the drive-by shooting. Because Davis was concerned for his safety, he had Carr get out of his vehicle and come back to Davis's cruiser. Davis asked Carr general questions about his identity, what he was doing, and where he was going. Carr said he did not have identification with him, and gave the name and identifying information of his brother, Michael Carr. The personal information checked out. Davis did not discover until later that Carr had used his brother's identity.

{¶ 10} Davis did not pat down Carr for weapons, but watched Carr's hands carefully, keeping them in plain view, until a supervisor, Sergeant Mogenberg, arrived. Davis was concerned that there might be a weapon in the car, based upon the dispatch.

{¶ 11} When Mogenberg arrived, Davis asked Carr if there were any weapons in his car. Carr said there weren't any weapons in his car. Davis then told Carr that he was going to check the vehicle. "If there was nothing there, he'd be on his way. He got a little upset that we were going to search the car."

{¶ 12} Davis found a rifle under a blanket on the back-seat floorboard of Carr's vehicle. Mogenberg handcuffed Carr, but Davis could not recall whether this was done when Davis went to search the car, or whether it was done after Davis had found the rifle.

{¶ 13} After the rifle was found, Carr was arrested. He was ultimately charged with Carrying a Concealed Weapon and with Having a Weapon While Under a Disability.

{¶ 14} Michael Gallagher, a detective with the Montgomery County Sheriff's Office,

interviewed Carr at the Montgomery County Jail the following morning. At that time, Carr was still a suspect in the drive-by shooting. Gallagher told Carr that he was investigating a Felonious Assault, presumably referring to the shooting, and he wanted to search Carr's vehicle for evidence connected to the shooting. Carr had no objection, and executed a written consent to search.

{¶ 15} No additional evidence was found in Carr's vehicle. The shell casings retrieved at the scene of the shooting did not match the ballistics of the rifle found in Carr's vehicle. By the time of the suppression hearing, Carr was no longer a suspect in the shooting.

{¶ 16} At the conclusion of the suppression hearing, the State argued that Davis had probable cause to believe that Carr's vehicle was involved in the shooting, and that exigent circumstances existed due to the mobility of the vehicle, so that a warrant to search the car was not required. Carr argued that Davis did not have enough facts to support probable cause for the search.

{¶ 17} In its written decision, the trial court rejected Carr's argument that: "Once he was stopped, * * * the police had no reason to pull him from his vehicle and search the vehicle."

{¶ 18} Following the denial of his motion to suppress, Carr pled no contest to both charges. He was found guilty and was sentenced to community control sanctions for a five-year period. From his conviction and sentence, Carr appeals.

## II

{¶ 19} Carr's sole assignment of error is as follows:

{¶ 20} "THE TRIAL COURT IN THIS CASE COMMITTED ERROR BY

ALLOWING ADMISSION OF EVIDENCE OBTAINED THROUGH AN IMPROPER SEARCH."

{¶ 21} Carr concedes that the initial stop was lawful, because he had run a stop sign. But Carr contends that the search of his vehicle was unlawful. He argues that the stop-sign violation subjected him to citation only, not arrest, so the search was not incident to a lawful arrest. He argues that "no search to ensure officer safety was necessary," because, after he was removed from his car, he "was not within reach of any possible weapons that might have been in his car."

{¶ 22} As a preliminary matter, the State argues that Carr has forfeited any claim he may have had that the search of his car was unlawful, because he did not raise this in the trial court. The State argues that Carr limited his claim in the trial court solely to the issue of whether the initial stop was lawful. We disagree.

{¶ 23} In his motion to suppress, Carr argued broadly that: "any evidence recovered as a result of the unlawful search and seizure of defendant and the vehicle must be suppressed." And he argued that: "Since the search and seizure of the defendant were allegedly done without probable cause, the prosecutor bears the burden of going forward with the evidence on the issue of whether probable cause existed for the search and seizure."

{¶ 24} At the suppression hearing, evidence was elicited concerning Davis's search of Carr's vehicle.

{¶ 25} At the conclusion of the suppression hearing, neither party argued the propriety of the stop. The State argued first. The State argued that:

{¶ 26} "In this particular case, looking at the totality of the circumstances as the Court

is required to do, Officer Davis had probable cause to believe that this vehicle was indeed involved in the shooting and that evidence or contraband relating to that shooting could potentially be in the vehicle.

**{¶ 27}** " * * * *

**{¶ 28}** "And under the totality of the circumstances then, the officer had probable cause to believe that this was the suspect vehicle and that a weapon relating to the drive-by shooting that had recently occurred would be found in the vehicle.

**{¶ 29}** "Therefore, under the automobile exception, Officer Davis was permitted to search this vehicle without a warrant, which he did, thereby recovering the weapon."

**{¶ 30}** Carr then argued to the contrary, concluding that: "So there was not enough probable cause for this officer to search for a weapon."

**{¶ 31}** We have opined that a lesser quantum of probable cause is required for a quick search for weapons in the interior of a car than is required for a full blown search of a car for evidence, generally. "[W]e do find that a police officer may search the interior of an automobile when the officer reasonably suspects that the individual has a weapon secreted in the automobile * * * and the officer has made the determination that he or she is going to allow the individual to return to the vehicle." *State v. Henderson* (November 7, 1997), Montgomery App. No. 16016, at p. 4. In that case, we noted that this is just an extension to automobile stops of the protective frisk for weapons originally countenanced by *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, and that this extension was recognized in *Michigan v. Long* (1983), 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201.

**{¶ 32}** In the case before us, Officer Davis testified that he believed there might be a

gun in Carr's vehicle. Although Davis may well have lacked probable cause for an evidentiary search of the vehicle, we conclude that he had a reasonable suspicion that there might be a weapon in the vehicle. Carr was driving a silver-colored vehicle about one mile from the scene of the drive-by shooting, and about three minutes after the dispatch, and Davis did not see another car in that area at that time – just before 1:00 a.m.

{¶ 33} Carr cites *Arizona v. Gant* (2009), 556 U.S. ____, 129 S.Ct. 1710, 173 L.Ed.2d 485, for the proposition that because he was secured at some remove from his vehicle during the search, any weapons in the car could not have been within his reach, and therefore Officer Davis could not conduct a weapons search of the car. *Arizona v. Gant* involved a situation where the driver was arrested for driving with a suspended license. Unlike Carr, the suspect in *Arizona v. Gant* was not going to be returned to his car. In fact, Justice Scalia, in his concurring opinion, expressly distinguished the holding in *Michigan v. Long*, supra, on that basis:

{¶ 34} "It must be borne in mind that we are speaking here only of a rule automatically permitting a search when the driver or an occupant is arrested. Where no arrest is made, we have held that officers may search the car if they reasonably believe 'the suspect is dangerous and . . . may gain immediate control of weapons.' *Michigan v. Long*, [citation omitted]. In the no-arrest case, the possibility of access to weapons in the vehicle always exists, since the driver or passenger will be allowed to return to the vehicle when the interrogation is completed. The rule of *Michigan v. Long* is not at issue here." 129 S.Ct. 1724.

{¶ 35} Davis testified that he would have sent Carr on his way if the weapons check of the interior of Carr's vehicle had been negative. This case is therefore within the ambit of

*Michigan v. Long*, supra, not *Arizona v. Gant*, supra.

{¶ 36} Davis's limited search of the interior of Carr's vehicle for weapons was justified.   Carr's sole assignment of error is overruled.

### III

{¶ 37} Carr's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

HALL and BROGAN, JJ., concur.

(Hon. James A. Brogan, retired from the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Mathias H. Heck, Jr.
Andrew T. French
Cary B. Bishop
Hon. Frances E. McGee