NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0863n.06

No. 10-5789

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | ***Dec 20, 2011*** |
| Plaintiff-Appellee, | ) | LEONARD GREEN, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| EDWARD ALLEN DAME, | ) | THE WESTERN DISTRICT OF |
| | ) | KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: BATCHELDER, MARTIN, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. In September 2008, Detective Wayne Conley heard that Edward Dame was transporting methamphetamine throughout western Kentucky. Conley attempted to buy meth from Dame through a confidential informant, but Dame told the informant he had run out and needed to borrow the informant's SUV to pick up a "load." At the informant's suggestion, the police put a GPS tracking device on the SUV. The informant then loaned the car to Dame, which he drove to Atlanta.

Conley monitored Dame on his way to Atlanta. When Dame began his return trip on October 4, Conley assembled a group of officers to intercept him. Later, as Dame approached, one of the officers clocked him speeding. Officer Mitchell Holliman turned on his lights and pursued Dame. Dame abruptly slowed down, then quickly sped up and changed lanes. Holliman turned on his siren

and followed Dame for two miles. Dame finally stopped, and the police arrested him. Dame refused an officer's request to search his car. Holliman "cleared" the car and detained a passenger sitting in the front seat. He then "walk[ed] around the vehicle" and "look[ed] inside the interior" for other passengers. He spotted several pieces of methamphetamine in the driver's seat. Holliman or another officer may have entered the car.

Within a "matter of minutes," the drug dog arrived. The dog alerted on the tire and hood of the car. The police searched the SUV and found methamphetamine and drug paraphernalia.

The grand jury thereafter indicted Dame. He filed a motion to suppress the fruits of the search, arguing that the police performed an illegal search incident to arrest. *See Arizona v. Gant*, 129 S. Ct. 1710 (2009). The district court denied the motion. Dame later pled guilty while reserving his right to appeal the denial of his suppression motion.

In reviewing that denial, we review a district court's factual conclusions for clear error and legal conclusions de novo. *See United States v. Howard*, 621 F.3d 433, 450 (6th Cir. 2010). In addition, Dame makes several arguments on appeal that he failed to raise below. The parties dispute whether he waived those arguments or merely forfeited them. *See United States v. Caldwell*, 518 F.3d 426, 430 (6th Cir. 2008). But "we need not enter this thicket," because those new arguments would fail even under plain-error review. *Id.*

Dame argues that using a GPS device to monitor his Atlanta trip (albeit with the car owner's permission) violated his Fourth Amendment right to privacy. Dame did not raise this argument below, and we exercise our discretion not to consider it for the first time on appeal. *See United States v. Richardson*, 385 F.3d 624, 631 (6th Cir. 2004).

Dame also argues that the police violated the Fourth Amendment when they pulled him over. Specifically, he contends that the police lacked probable cause to suspect him of trafficking at that time; and though he acknowledges that a traffic infraction could have justified the stop, he denies that he committed one. *See United States v. $118,170 in U.S. Currency*, 69 F. App'x 714, 715 (6th Cir. 2003). On the latter point, Dame asserts that Officer Holliman was "forced to admit" on cross-examination that he stopped Dame in just 11 seconds. In Dame's view, Holliman would have needed more time to catch him if he was speeding. Dame adds that Holliman's "dash camera system" undermines testimony that Dame initially sped away from Holliman.

Although Dame did not raise this argument below, the district court held that Dame committed a traffic infraction. It did not plainly err. It is not true that Officer Holliman admitted to chasing Dame for just 11 seconds. At the suppression hearing, Dame's counsel asked Holliman about dispatchers' notes indicating that Holliman reported chasing Dame at 1:03:23 and reported pulling Dame over at 1:03:34. But Holliman testified that the time stamps merely reflected the time at which the dispatcher recorded events, not the time the events actually occurred. Dame offers no citation in support of his assertion that Holliman's "dash camera system" shows Dame did not try to evade the police. In any event, the district court decided that Officer Holliman's account of the chase was credible. We defer to that assessment. *See United States v. Bonilla*, 357 F. App'x 693, 695 (6th Cir. 2009).

Next, Dame challenges the "initial search" of his SUV—presumably the events before the arrival of the drug dog. He contends that the police then lacked probable cause to search the interior for drugs, so the search could only have been a search incident to Dame's arrest. Dame says that

such a search would have been unlawful here because he was only pulled over for speeding and had been removed from the vehicle. *See Gant*, 129 S. Ct. at 1714, 1719.

Dame raised this argument below, and the district court correctly rejected it. At the time the police conducted the putative search, *Gant* was not on the books. The prevailing law in this circuit allowed police to search cars' passenger compartments upon arresting the occupants. *See United States v. Buford*, 632 F.3d 264, 269 (6th Cir. 2011). Under these circumstances, the police acted in good faith when searching Dame's SUV, so the district court need not have suppressed any fruits of that search. *See Davis v. United States*, 131 S. Ct. 2419, 2427–29 (2011).

Dame finally argues, for the first time on appeal, that the police prolonged his traffic stop "beyond the time reasonably required to complete [the original] mission." *United States v. Bell*, 555 F.3d 535, 541 (6th Cir. 2009).

But the police may extend routine traffic stops if they develop "reasonable suspicion of the presence of drugs" during the stop. *See United States v. Simpson*, 520 F.3d 531, 544–45 (6th Cir. 2008). Here, the police developed that suspicion when Officer Holliman walked around the car and saw pieces of methamphetamine sitting in plain view on the front seat. Thus, this argument too is meritless.

The district court's judgment is affirmed.