**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-50390 |
| Plaintiff - Appellee, | D.C. No. 8:10-cr-00123-JVS-2 |
| v. | |
| RUSSELL CORDELL LATHOM, AKA Yo Compton, AKA Cordell Jones, AKA Russell Lathom, AKA Russell C. Lathom, AKA Russell Cordell Yohon Lathom, AKA Russell Cordell Yohon B Lathom, AKA Russ Russ, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted December 5, 2013
Pasadena, California

Before: PREGERSON, BERZON, and CHRISTEN, Circuit Judges.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Russell Cordell Lathom appeals the district court's denial of his motion to suppress evidence found during a search of his car. We review *de novo* the district court's ruling on a motion to suppress and for clear error the district court's underlying findings of fact. *United States v. Turvin*, 517 F.3d 1097, 1099 (9th Cir. 2008). We may affirm the denial of Lathom's motion to suppress on any basis supported by the record. *United States v. Lopez*, 482 F.3d 1067, 1071 (9th Cir. 2007) (citations omitted).

**1.** On May 26, 2010, Lathom was pulled over in a traffic stop. Lathom does not challenge the district court's finding that the initial stop was valid under *Terry v. Ohio*, 392 U.S. 1 (1968).

There was probable cause to arrest Lathom within two minutes of the initial stop. "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Lopez*, 482 F.3d at 1072 (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

At the beginning of the May 26 traffic stop, at about 12:30 p.m., the law enforcement officers had at least the following facts:

(a)    Hung Dong was a suspected drug trafficker;

(b)     Scott Petway made a deal to sell the undercover agents a total of 10,000 MDMA pills;

(c)     On May 25, 2010, the day before the arrest, Petway received the money for the drugs from the undercover agents at the Macaroni Grill, then drove directly to Dong's house, then drove directly back to the Macaroni Grill and delivered 1,000 pills to the undercover agents;

(d)     On the morning of May 26, the day of the arrest, Petway again met with the undercover agents at the Macaroni Grill, and received from them payment for the remaining 9,000 pills;

(e)     Petway then left that meeting and drove to Dong's house; and

(f)     While Petway remained at Dong's house, Dong left and drove directly to a parking lot to meet Lathom, who gave Dong two white bags.

In addition, by about 12:31 p.m., on May 26, the agents had observed Dong holding two white bags as he returned to his house, where Petway waited. Petway had advised the undercover agents before meeting with them on the morning of May 26 that Dong had the remaining pills ready. The agents were entitled to infer that Petway meant that arrangements had been made and could be completed promptly, rather than that the pills were in Dong's possession. Under the totality of these circumstances, the law enforcement agents had sufficient information

3

reasonably to conclude that, when Lathom handed two bags to Dong, he had supplied Dong with MDMA pills. The timing of the interaction the agents observed between Lathom and Dong, the presence of Petway in Dong's house, the return of Dong to his house with the bags, and the overall sequence of events surrounding the MDMA pill deal supported this understanding.

**2.** Because there was probable cause to support Lathom's arrest at the earliest time that he contends the *Terry* stop became an arrest, we need not resolve whether Lathom was in fact arrested two minutes into the stop, or when the formal arrest order was given, or at some intervening moment.

**3.** The search of Lathom's car was proper under the automobile exception to the warrant requirement because the officers had probable cause to believe that it contained evidence of the drug transaction. *See Arizona v. Gant*, 556 U.S. 332, 347 (2009); *United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010). It was reasonable for the officers to infer that Dong gave Lathom money in exchange for the drugs, even though the officers did not see Dong give Lathom the money. Further, the money was likely to still be in Lathom's car at the time that he was stopped by Officer Pate, because the stop took place shortly after Lathom left his meeting with Dong. Also, Officer Pate saw Lathom quickly secure his glove compartment as Pate approached the car.

4

**4.** Even if the automobile exception did not apply, the evidence found in the car would have been inevitably discovered during an inventory search when the car was impounded, and thus not subject to the exclusionary rule. *Nix v. Williams*, 467 U.S. 431, 444 (1984). Lathom concedes that California Vehicle Code section 22651(h) "authorizes the impoundment of a vehicle when a person is arrested," and that a lawfully-seized vehicle may be subjected to an inventory search. He argues that this code section does not apply here, because there was not probable cause to arrest him. As discussed above, however, there was probable cause to support Lathom's arrest.

**AFFIRMED.**