Filed 2/4/15  P. v. Hood CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D065076 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN303291) |
| DANIEL ROGER HOOD, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Blaine K. Bowman, Judge.  Affirmed.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Martin E. Doyle, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Daniel Roger Hood of five counts of oral copulation on a child 10 years of age or younger (Pen. Code, § 288.7, subd. (b));[1] one count of sexual intercourse with a child under 10 years of age (§ 288.7, subd. (a)); and five counts of lewd acts on a child under the age of 14 years (§ 288, subd. (a)).  The trial court sentenced Hood to a total term of 116 years to life.

On appeal, Hood contends that the warrantless examination of his cell phone violated the Fourth Amendment.  We reject this contention and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Daniel Roger Hood visited his friend Charles Bryant at Bryant's home on January 20, 2012.  During the course of the evening, Hood set his cell phone down on a table, where Bryant's 13-year-old son, Z.B., picked it up and looked through it.  Z.B. discovered videos on Hood's cell phone showing Hood engaging in sexual acts with a young girl.  Z.B. hid the cell phone from Hood, who frantically searched for it after he realized that it was missing.  Z.B. gave the cell phone to Bryant, who viewed some of the videos and photographs that were on the cell phone.  Bryant recognized some of the children on the videos, including E.S., the youngest daughter of Hood's former girlfriend, and children from the Indian reservation where Bryant and Hood used to live.

After being rebuffed by the Corona Police Department (Riverside County), Bryant contacted the FBI on January 26.  FBI Special Agents Heather Koch and Klaus Franze (the FBI agents) interviewed Bryant the following day.  After Bryant described the

---

[1]     Unless otherwise indicated, further statutory references are to the Penal Code.

circumstances of how he had obtained the cell phone, Koch said, "Show me what disturbs you." Bryant proceeded to show the FBI agents one or more of the videos that were on the cell phone.

The FBI agents determined that a video on the cell phone clearly depicted child pornography. The video showed the perpetrator's face, identifiable as Hood. Koch asked Bryant to give the cell phone to her, which he did. Koch then obtained a federal search warrant from a U.S. Magistrate Judge and submitted the cell phone for a forensic examination. Koch also served an administrative subpoena on the cellular telephone company to confirm that Hood was the owner of the cell phone.

Hood's cell phone contained 57 videos and more than 3000 photos, including many photos of Hood, his car, and his friends. Thirteen of the videos clearly depicted Hood engaging in sex acts with E.S. The cell phone also contained child erotica, including recordings of children's buttocks as they walked down the street. Other videos showed E.S. dancing in the shower while Hood told her to "shake your booty" and "shake it for the internet crowd." In several videos, E.S. could be heard referring to the adult male as "Daniel."

After identifying E.S. and the location of the acts, Koch referred the case to the Oceanside Police Department. She coordinated a forensic examination and interview of nine-year-old E.S., who disclosed that Hood had orally copulated her, sodomized her, placed his penis inside her vagina, fondled her breast area, ejaculated into her vagina and anus, made her watch adult pornography, directed her to lick his nipples and masturbate

3

him with her hand, and drugged her, beginning when she was four years old and continuing until she was nine years old. The videos on Hood's cell phone were made when E.S. was eight years old. A doctor who conducted a physical examination of E.S. determined that her hymen and vaginal wall showed abnormalities indicative of child sexual abuse.

The trial court denied Hood's motion to exclude the cell phone videos and photographs on grounds of authenticity and lack of foundation.

A four-day jury trial was held in May and June 2014. The jury heard testimony from Charles Bryant, Heather Koch, E.S., E.S.'s mother and older sister, Oceanside police officers, and Catherine McLennan, who had conducted a forensic interview of E.S. The jury reviewed videos of Hood engaging in sexual activities with E.S. Hood testified in his own defense, stating that he had not had access to E.S. during the time that the videos were allegedly made and that the cell phone was not his. He also claimed that the videos had been switched to his cell phone by a third party without his knowledge. The jury returned guilty verdicts on all charges.

In April 2014, Hood's appellate counsel filed an opening brief raising no specific issues on appeal and asking this court to conduct an independent review of the record. (*People v. Wende* (1979) 25 Cal.3d 436; *Anders v. California* (1967) 386 U.S. 783.) Hood filed several supplemental briefs on his own behalf with this court, raising, among

other issues, a claim that the search and seizure of his cell phone violated his Fourth Amendment rights.[2]

During the pendency of this court's independent review of the record, the U.S. Supreme Court decided *Riley v. California* (2014) 134 S.Ct. 2473 (*Riley*). *Riley* holds that a warrantless search of a cell phone incident to arrest violates the Fourth Amendment, and that police must generally secure a warrant before searching digital information on an individual's cell phone, unless a case-specific exception to the warrant requirement applies. (*Riley*, *supra*, at p. 2485.)

After reviewing the record on appeal, this court directed appellate counsel to file supplemental letter briefs addressing the following questions:

(1) What impact, if any, does *Riley* have on this case?

(2) Assuming that a warrant was required prior to any examination of the contents of Hood's cell phone by law enforcement authorities, does any exception to the warrant requirement apply under the circumstances of this case?

(3) Assuming that a warrant was required prior to any examination of the contents of Hood's cell phone by law enforcement authorities, does the doctrine of inevitable discovery apply to render harmless any error in failing to obtain a warrant prior to the initial examination?

---

[2] Hood did not claim at trial that the admission of cell phone evidence violated his Fourth Amendment rights. However, constitutional issues may be raised for the first time on appeal where the asserted error fundamentally affects the validity of the judgment or important issues of public policy are at stake. (*Hale v. Morgan* (1978) 22 Cal.3d 388, 394; *People v. Brown* (1996) 42 Cal.App.4th 461, 470-471 [appellate court has discretion to decide a pure question of law based on undisputed facts].)

DISCUSSION

I

*The Parties' Arguments*

Hood contends that FBI Agents Koch and Franze's warrantless examination of his cell phone during their interview with Bryant violated the Fourth Amendment. He argues that the search was not permitted because it was not a search incident to arrest, and there were no exigent circumstances. Hood further argues that although the government eventually obtained a warrant, the initial warrantless search and seizure of his cell phone violated his Fourth Amendment rights and required suppression of all evidence eventually seized from that device.

The People assert that the exclusionary rule does not apply to searches conducted by private citizens and that *Riley* is therefore inapplicable. The People further contend that even if the FBI agents exceeded the scope of the private searches conducted by Bryant or his son, the extended government search was legal because *Riley* does not apply retroactively and the good faith exception to the warrant requirement applies. Finally, the People argue that the doctrine of inevitable discovery applies because Bryant would have persisted in his efforts to bring the contents of the cell phone to the attention of law enforcement authorities.

Hood acknowledges that the Fourth Amendment does not generally apply to searches conducted by private citizens, but contends that the record does not unequivocally establish that the FBI agents confined their search of Hood's cell phone

during their interview with Bryant to the material that Bryant had previously viewed. Hood further contends that the doctrine of inevitable discovery does not apply because there is no evidence suggesting that authorities could have obtained a search warrant on independent evidence before they examined the cell phone. Specifically, Hood points to the facts that the victim had not come forward, and Bryant's statements could not be corroborated. Finally, Hood contends that the People's argument that Bryant would have persevered until a police investigation was initiated constitutes mere speculation.

II

*The Fourth Amendment*

The Fourth Amendment to the U.S. Constitution directs that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Supreme Court recently stated that the expectation of privacy in the information contained on an individual's cell phone is as great as, or greater than, the privacy interest in the "papers and effects" that might be found in an individual's home. (*Riley*, *supra*, 134 S.Ct. at pp. 2489-2491.)

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only

to a few specifically established and well-delineated exceptions."[3]  (*Katz v. United States* (1967) 389 U.S. 347, 357; *Arizona v. Gant* (2009) 556 U.S. 332, 338; *Riley, supra,* 134 S. Ct. at p. 2482; *Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 219.)  Unless a case-specific exception to the warrant requirement applies, " '[w]here a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant.' [Citation.]"  (*Riley, supra,* 134 S. Ct. at p. 2482.)

However, the Fourth Amendment proscribes only governmental action.  (*People v. Wilkinson* (2008) 163 Cal.App.4th 1554, 1564 (*Wilkinson*).)  It " 'is wholly inapplicable "to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." ' "  (*U.S. v. Jacobsen* (1980) 466 U.S. 109, 130, quoting *Walter* v. *United States* (1984) 447 U.S. 649, 662.)  When the government conducts a search subsequent to a search by a private citizen, the Fourth Amendment is not implicated unless the government's search exceeds the scope of the search by the private citizen, or the private citizen can be said to be acting as a government agent.  (*Wilkinson*, *supra*, at pp. 1572-1573.)

_____

[3]     Generally, "[a]mong the exceptions to the warrant requirement is a search incident to a lawful arrest.  [Citation.]  The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations.  [Citations.]" (*Arizona v. Gant*, *supra*, 556 U.S. at p. 338.)  Warrantless searches may also be permissible in exigent circumstances "to prevent the imminent destruction of evidence in individual cases, to pursue a fleeing suspect, and to assist persons who are seriously injured or are threatened with imminent injury."  (*Riley*, *supra*, 134 S.Ct. at p. 2494.)

*The FBI's Search of Hood's Cell Phone Did Not Violate His Fourth Amendment Rights*

We agree with the People's argument that Agent Koch's examination of Hood's cell phone did not violate the Fourth Amendment. "The Fourth Amendment's prohibition against unreasonable searches and seizures does not apply to searches by private citizens, even if the private citizens act unlawfully . . . ." (*Wilkinson*, *supra*, 163 Cal.App.4th at p. 1564.) Here, Bryant, a private citizen, viewed videos and photographs on Hood's cell phone and then sought assistance from law enforcement authorities to investigate evidence that Bryant believed depicted sexual offenses committed on children. The subsequent warrantless search of Hood's cell phone by FBI Agent Koch would violate the Fourth Amendment only if her search exceeded the scope of Bryant's search or that of his son.[4] (*Wilkinson*, *supra*, 163 Cal.App.4th at pp. 1572-1573.)

In *Wilkinson*, two private citizens found signs that the defendant was surreptitiously recording their intimate activities on his computer. They retrieved 36 compact discs from his room and brought them to the police station. (*Wilkinson*, *supra*, 163 Cal.App.4th at pp. 1560-1561.) They showed two of the images to a detective and left all of the discs with him. However, there was no evidence in the record as to "exactly what" discs the detective viewed or whether those discs were ones that one of the citizens had viewed in his or her private search. As a result, the reviewing court concluded that it was impossible to determine whether the detective had exceeded the scope of the private

---

[4] Hood does not contend that Bryant or his son was acting as a government agent.

search. Because there was no evidence in the record as to exactly what the government actor viewed or whether the government's search was limited to the same material that the private citizen had viewed, the reviewing court remanded the matter to the trial court to determine what evidence, if any, was subject to suppression as a result of an illegal search. (*Id*., at pp. 1573-1575)

Here, in contrast, the evidence in the record clearly shows that after listening to Bryant's description of how he obtained the cell phone, Agent Koch said to him, "Show me what disturbs you." Bryant testified that he then showed the FBI agents five or six videos and photographs of Hood that Bryant thought were inappropriate. Agent Koch testified that she could not recall how many videos she had viewed, but she believed that she had looked at one or two videos during her interview with Bryant. Once Koch determined that the videos depicted child pornography, she took the phone, with Bryant's permission. She then obtained a federal search warrant before submitting the phone to forensic examiners.

Bryant's son Z.B. "went through" Hood's phone looking at photos. At Z.B.'s urging, Bryant viewed some of the videos and photographs on Hood's cell phone before deciding to contact authorities. In stating to Bryant, "Show me what disturbs you," Koch impliedly asked him to show her only the content on the cell phone that he had already viewed. Thus, the record clearly supports the inference that the FBI agents viewed only material that the private citizen had previously viewed and did not exceed the scope of the search by the private citizen. (*Wilkinson*, *supra*, 163 Cal.App.4th at pp. 1572-1573.)

10

We conclude that the FBI agent's search of Hood's cell phone did not violate Hood's Fourth Amendment rights.  Bryant and Z.B. viewed the contents of Hood's cell phone prior to the search by the government agents, and the scope of the agents' initial, warrantless search was more limited than those private searches.  Because we conclude that the government's initial search was legal, the FBI's subsequent search of Hood's cell phone pursuant to warrant was not tainted by any prior illegal search.  (See, generally, *Segura v. U.S.* (1984) 468 U.S. 796, 804.)  Therefore the government's subsequent examination of that device is not at issue.  Because the government action in this case does not implicate the Fourth Amendment, we need not consider the parties' arguments whether the Supreme Court's proscription against routine searches of arrestees' cell phones is to be applied retroactively, or whether the doctrine of inevitable discovery applies under the circumstances of this case.

DISPOSITION

The judgment is affirmed.

AARON, J.

WE CONCUR:


HALLER, Acting P. J.


O'ROURKE, J.

11