Filed 3/21/13  P. v. Williams CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>MICHAEL ERNEST WILLIAMS,<br><br>        Defendant and Appellant. | B241954<br><br>(Los Angeles County<br>Super. Ct. No. VA119137) |

        APPEAL from a judgment of the Superior Court of Los Angeles County.
Michael L. Schuur, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

        Michael Williams, in pro. per.; Kevin Michele Finkelstein, under appointment by the Court of Appeal, for Defendant and Appellant.

        No appearance for Plaintiff and Respondent.

_____

An amended information charged Michael Williams with one count of second degree robbery (Pen. Code, § 211).[1] The information alleged in the commission of the robbery Williams, "with the intent to do so, took, damaged and destroyed property of a value exceeding $65,000," within the meaning of section 12022.6, subdivision (a)(1).

Evidence presented at trial showed that robbery victim Cesar Ramirez worked for a recycling company and sometimes paid out large sums of money in cash for recyclable materials. On multiple occasions, defendant Williams had brought car parts to Ramirez's employer to be sold. On March 23, 2011, at about 7:30 a.m., Ramirez arrived for work carrying a backpack full of bundles of cash totaling approximately $120,000. Ramirez had withdrawn the money from the bank the evening before because he needed to pay a customer for a large volume of recyclable materials.

As Ramirez was unlocking the gate at the recycling company, two men approached. A man later identified as Juan Carlos Garcia demanded Ramirez's backpack, told Ramirez he had a gun and would shoot, and moved his hand inside his jacket pocket indicating he had a gun. Garcia grabbed the backpack and Ramirez let him because Ramirez was afraid Garcia would hurt him. The two men ran off.

Ramirez flagged down a stranger who was driving by and asked for his help. The stranger allowed Ramirez to get into his vehicle and they drove off after Garcia and the other man. Ramirez saw Garcia and the other man run to and climb inside a white sport utility vehicle with paper license plates. Ramirez dialed 911 and provided the location and description of the white vehicle. Eventually, Ramirez lost sight of the white vehicle and went back to the recycling company to wait for the police to respond.

A short time later officers stopped a white sport utility vehicle matching the description Ramirez had provided. Williams was driving and Garcia and his companion were passengers. The officers ordered the three men to exit the vehicle. An officer looked inside the vehicle and saw bundles of cash in the center console next to the driver's seat. Williams, Garcia and the other man were arrested. During a field show-up,

---

[1] Further statutory references are to the Penal Code.

Ramirez identified Garcia and the other man as the people who had run off with his backpack. Ramirez recognized Williams because of their prior business relationship.

Williams testified at trial. He stated he went to the recycling company in the morning on March 23, 2011, because Ramirez was supposed to pay him for recyclable materials he had dropped off previously. While waiting for Ramirez to get there, Williams realized the food order he had picked up from a fast-food restaurant was incorrect. Williams decided to return to the restaurant to pick up the correct order while Garcia (Williams's ex-brother-in-law) and the other man got out of Williams's vehicle to smoke a cigarette. As Williams was returning from the restaurant, he saw Garcia and the other man walking down the street. He picked them up and drove away quickly when he realized they were being chased by another vehicle. Williams stated he did not know Garcia had taken Ramirez's backpack. Nor did he know that Garcia or the other man had placed more than $100,000 in the center console of the vehicle he was driving. Williams denied being involved in the robbery.

The jury found Williams guilty of robbery and found true the special enhancement allegation under section 12022.6, subdivision (a)(1). The trial court sentenced Williams to four years in state prison: the middle term of three years for the robbery plus a consecutive one-year term for the enhancement.

Williams appealed. We appointed counsel to represent him on appeal. After examination of the record, counsel filed an opening brief raising no issues and asking this court to review the record independently pursuant to *People v. Wende* (1979) 25 Cal.3d 436. On December 10, 2012, we advised Williams that he personally had 30 days to submit any contentions or issues he wished us to consider. We also directed his appointed counsel to send the record and opening brief to Williams immediately. On December 24, 2012, Williams filed a letter brief.

Williams raises three issues. First, he contends his case should have been dismissed because Juan Carlos Garcia was "made unavailable by the state by deportation." Williams asserts Garcia was a "material witness" who "would have been able to give testimony that would have le[d] to [his] innocence."

3

An information filed in this case on September 15, 2011 charged both Juan Carlos Garcia and Williams with the second degree robbery of Cesar Ramirez. During a pre-trial proceeding on October 13, 2011, the trial court indicated on the record that Garcia was "being returned to his country of origin." At a hearing on October 27, 2011, the prosecutor stated for the record that there was an outstanding warrant for Garcia's arrest. The trial court questioned why federal authorities took custody of Garcia without allowing the state to prosecute him for this robbery.

Williams cannot demonstrate error. The record does not indicate he informed the trial court or the prosecution that he wanted to call Garcia as a witness. He did not argue below that the charges against him should be dismissed based on Garcia's deportation. Moreover, there is nothing in the record indicating Garcia would have provided testimony favorable to Williams. (*People v. Valencia* (1990) 218 Cal.App.3d 808, 812-813, 825.)

The second issue Williams raises is "illegal search and seizure." He argues the arresting officer should have obtained a search warrant before searching the vehicle Williams was driving, and recovering the bundles of cash. Williams forfeited this issue by failing to move to suppress the evidence below. (§ 1538.5, subd. (m).) He did not object to the admission of evidence on this ground at trial. Notwithstanding the forfeiture, Williams's claim of illegal search and seizure fails based on the record. Williams was arrested as a suspect in a robbery. At the time of the search, it was "reasonable to believe the vehicle contain[ed] evidence of the offense of arrest." (*Arizona v. Gant* (2009) 556 U.S. 332, 351.) In fact, the vehicle Williams was driving away from the scene of the crime did contain the bundles of cash which were inside Ramirez's backpack at the time he was robbed.

The third issue Williams raises is ineffective assistance of counsel. "'To establish ineffective assistance of counsel, a [defendant] must demonstrate that (1) counsel's representation was deficient in falling below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation subjected the [defendant] to prejudice, i.e., there is a reasonable probability that, but for counsel's

4

failings, the result would have been more favorable to the [defendant]. [Citations.] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." [Citation.]' [Citation.]" (*In re Jones* (1996) 13 Cal.4th 552, 561.)

The record does not support any of the arguments Williams makes in support of his ineffective assistance of counsel claim. Williams argues his counsel "failed to have [unspecified] evidentiary hearings," and "failed to consult with [him] regarding [unspecified] important facts" and "theories." He also argues his counsel failed to conduct "research" regarding, including but not limited to, phone calls between him and Ramirez, and Ramirez's statement he had the bundles of cash at the time of the robbery because he owed money to someone other than Williams. He further argues his counsel "[d]id not try and recover any other video tape that would have been exculpatory evidence on [his] behalf" and "entered the wrong invoices into evidence." Williams does not explain what additional evidence his counsel could have introduced which would have been helpful to his case.

Williams asserts his counsel failed to pursue a plea deal for him, refused to let his grandfather testify at trial,[2] convinced him not to retain private counsel for sentencing by representing she had "worked out a deal" with the judge, and refused to allow him to address the trial court at the sentencing hearing. There is nothing in the record supporting any of these assertions. We have found nothing in the record establishing deficient performance by Williams's counsel.

As part of his ineffective assistance of counsel claim, Williams argues, "The composition of the jury was wrong for [his] case and [counsel] did nothing to rectify it."

---

[2] Williams's grandfather was a participant in the business transactions with Ramirez.

He references the fact his counsel made a *Wheeler*[3] motion, but he does not challenge the court's ruling on that motion.[4] What he complains about is that his counsel did not ask the trial court to have more potential jurors brought into the courtroom when the pool was exhausted. The record indicates both sides accepted the jury panel when there were three potential jurors left in the pool. The defense had exercised eight of its ten peremptory challenges at that point. (Code Civ. Proc., § 231, subd. (a).) In selecting alternate jurors, the defense exercised another peremptory challenge and the remaining two jurors in the pool became the alternates. The record does not support Williams's assertion his counsel rendered ineffective assistance during jury selection.

We have examined the entire record, including the reporter's transcript from the hearing on Williams's *Wheeler* motion, and are satisfied that Williams's appellate counsel has fully complied with his responsibilities and that no arguable issues exist. (*People v. Kelly* (2006) 40 Cal.4th 106, 109-110; *People v. Wende*, *supra*, 25 Cal.3d at p. 441.)

---

[3] *People v. Wheeler* (1978) 22 Cal.3d 258.

[4] We have reviewed the reporter's transcript from the May 2, 2012 hearing on Williams's *Wheeler* motion. We are satisfied the trial court did not err in denying the motion. In support of the motion, defense counsel asserted the prosecution had used two of the three peremptory challenges it had exercised to excuse the only two African-Americans in the jury pool. Defense counsel noted for the record that Williams is African-American. Finding Williams had made a prima facie case of group bias, the trial court asked the prosecutor to state reasons for excusing these potential jurors. (*People v. Cruz* (2008) 44 Cal.4th 636, 655 ["'""once the defendant has made out a prima facie case, the "burden shifts to the State to explain adequately the racial exclusion" by offering permissible race-neutral justifications for the strikes'""'"].) The prosecutor gave reasons which were not based on race (one of these two potential jurors was previously on a hung jury; the other had a child who was a social worker, which the prosecutor described as a "fairly liberal cause[]," and another child whom the potential juror believed worked as a deputy in the District Attorney's Office, but based on her description of where her daughter worked the prosecutor was not convinced, commenting, "She could be a public defender."

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.


                                        CHANEY, J.


We concur:



        MALLANO, P. J.



        ROTHSCHILD, J.


7