[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10416
Non-Argument Calendar
_____

D.C. Docket No. 3:12-cr-00118-TJC-PDB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TIMOTHY ERIC ALSTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 17, 2015)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Timothy Alston was convicted of attempted possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D), and 846, and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  He appeals his convictions for those offenses on the ground that the district court erred in denying his motion to suppress evidence found during a warrantless search of his car after his arrest.  After careful review, we affirm.

## I.

Alston and another person were arrested after purchasing marijuana from undercover officers at a flea market in Jacksonville, Florida.  Upon Alston's arrest, officers conducted a warrantless search of his car—which Alston had driven from Savannah, Georgia, to conduct the drug deal—and found two guns and a "wad of cash."  After his indictment, Alston moved to suppress the evidence, arguing that the warrantless search of his car violated the Fourth Amendment because it was not a valid search incident to arrest under the Supreme Court's decision in *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710 (2009).

The relevant facts about Alston's arrest and the search of his car are as follows.[1]   Detective Shareef Valentine of the Jacksonville Sheriff's Office

---

[1]   We construe the facts in the light most favorable to the government, the party prevailing below.  *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000).  We also

2

narcotics division was contacted on June 14, 2012, by a reliable confidential informant, who advised Valentine that the informant had talked with an individual who was coming to Jacksonville from Savannah, Georgia, and looking to purchase powder cocaine and seven pounds of marijuana.  With Valentine's authorization, the informant arranged a meeting with the individual later that day at a local flea market.  Valentine obtained about five-and-a-half pounds of marijuana from the drug vault of the Sheriff's Office in order to conduct a controlled drug purchase, but he did not get any cocaine.

Valentine, a second undercover agent, and the informant arrived at the flea market in a pickup truck, which contained audio recording equipment.  Alston arrived driving a Nissan Maxima, which he parked next to the truck.  Alston then entered the passenger seat of the truck, asking about the quantity and price of the marijuana.  Valentine said it was $950 per pound and showed some of the marijuana to the Alston, who seemed surprised and pleased by the quality.  Alston got out of the vehicle to show a small quantity to another individual sitting in the front passenger seat of the Maxima.  After inspecting the marijuana, the second individual gave some money to Alston, who returned to the truck and talked about obtaining additional marijuana.  Alston left and re-entered the Maxima.  The

---

review the entire record, including trial testimony.  *United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir. 2007).

detectives, sitting higher in the truck, could see the second man give Alston some additional money.  Alston returned to the truck and counted out between $4,000 and $4,800 in front of the officers.  Valentine then gave the takedown order, and other officers moved in and took into custody Alston and the second man.

Once the takedown order was given, Donald Nixon, a narcotics detective with the Sheriff's Office, pulled the passenger out of the vehicle and handcuffed him.  As he did so, Nixon noticed a "wad of money" on the floorboard of the vehicle that was rubber-banded in "drug folds," which was consistent with what he had seen in other drug investigations.  After the passenger was handcuffed and removed, Nixon searched the glove compartment and found a Hi-Point pistol.  Nixon also saw another detective pull a weapon from underneath the driver's seat.  Nixon acknowledged at the suppression hearing that the occupants of the vehicle no longer had access to the vehicle at the time of the search.  Nixon also testified that the vehicle was seized for evidentiary purposes, and that it was the Sheriff's Office's policy for the officer to inventory the vehicle before the vehicle was impounded.

In a report and recommendation issued after the suppression hearing, the magistrate judge concluded that the search was permissible because "it [was] not unreasonable to believe that other drugs, paraphernalia, cell phones, firearms or records of drug transactions would be found in a vehicle in which a drug defendant

4

has driven to a transaction."  Further, the judge explained, officers had probable cause to believe that some money intended to be used in a drug transaction would be in the vehicle since the quantity of marijuana purchased was less than amount originally requested.  The officers, according to the judge, also had reason to believe that some portion of the marijuana given to Alston by the undercover officer would be in the vehicle.  Alternatively, the magistrate judge found that the search of the vehicle was permissible as an inventory search because officers had the authority to impound the vehicle, and they complied with departmental policy in conducting the search, and, even if the search was not a valid inventory search, the firearms found would have been inevitably discovered because the vehicle was subject to inventory.  Therefore, the magistrate judge recommended denying the motion to suppress.

The district court overruled Alston's objections to the report and recommendation and denied the motion to suppress.  After a trial, a federal jury found Alston guilty of both counts in the indictment.  The district court sentenced Alston to a total term of 92 months' imprisonment.

## II.

In an appeal from the denial of a motion to suppress, we review the district court's factual findings for clear error and its application of the law to those facts *de novo*.  *United States v. Caraballo*, 595 F.3d 1214, 1222 (11th Cir. 2010).  "In

addition, we may affirm the denial of a motion to suppress on any ground supported by the record." *Id.*

### III.

In most circumstances, unless there is consent, police officers must obtain a warrant supported by probable cause to justify a search under the Fourth Amendment. *United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir. 2005). There are, however, several established exceptions to the warrant requirement. The following three exceptions are implicated by the facts of this case: (1) a search of a vehicle incident to a lawful arrest of a recent occupant ("search incident to arrest exception"), *see Gant*, 556 U.S. at 343-44, 129 S. Ct. at 1719; (2) a search based on probable cause to believe that an operational vehicle contains evidence of criminal activity ("automobile exception"), *see United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007); and (3) an inventory search pursuant to standardized procedures ("inventory exception"), *see United States v. Khoury*, 901 F.2d 948, 957-59 (11th Cir. 1990). The parties and the district court appear to have focused their attention on the exceptions for searches incident to arrest and inventory searches.[2] Alston's arguments on appeal concern these two exceptions.

According to the Supreme Court in *Gant*, two situations permit officers to search a vehicle incident to arrest: (1) "when the arrestee is unsecured and within

---

[2] The transcript of the suppression hearing reflects some conflation of the search-incident-to-arrest exception and the automobile exception.

reaching distance of the passenger compartment at the time of the search"; or (2) "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'"  *Gant*, 556 U.S. at 343, 129 S. Ct. at 1719 (quoting *Thornton v. United States*, 541 U.S. 615, 632, 124 S. Ct. 2127, 2137 (2004) (Scalia, J., concurring in the judgment)).  The Court indicated that where an occupant is arrested for a drug offense, as opposed to a traffic offense, "the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein."  *See id.* at 344, 129 S. Ct. at 1719.

Alston argues based on *Gant* that the magistrate judge and district court erred in finding that the "crime of arrest" provided a basis for the search of the vehicle.  The officer's booking sheet, he asserts, reflected that Alston was arrested for conspiring to traffic in cocaine, delivering or distributing marijuana within a thousand feet of a place of worship, and possessing a firearm.   Because there was no evidence of these crimes before the search, if at all, Alston contends, officers could not reasonably have believed that the vehicle contained evidence of the crimes.

Alston's argument therefore depends on looking at the "crime of arrest" from the officer's subjective perspective, by reference to the booking sheet, in essence asking whether it is reasonable to believe that evidence relevant to the *crime for which the officer believes he is arresting the defendant* might be found in

the vehicle.  But both this Court and the Supreme Court have rejected inquiry into an officer's subjective intentions in reviewing the constitutionality of searches and seizures under the Fourth Amendment.  *See, e.g.*, *Whren v. United States*, 517 U.S. 806, 811-13, 116 S. Ct. 1769, 1773-74 (1996) (holding that the "reasonableness" of a traffic stop is viewed objectively, not based on the actual motivations of the individual officer); *United States v. Lanzon*, 639 F.3d 1293, 1300 (11th Cir. 2011) ("A police officer's subjective reasons for a search do not control the legal justification for his actions, as long as objective circumstances justify the search."); *Jones*, 377 F.3d at 1314 (holding that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis" and that "an arrest will be upheld if the objective circumstances justify the arrest" (quotation marks omitted)).

Although Alston's position is doubtful, we need not further address whether the search of Alston's car was permissible under *Gant*.   We affirm the denial of the motion to suppress alternatively under the automobile exception because officers had probable cause to believe that the vehicle contained evidence of criminal activity.  *United States v. Ross*, 456 U.S. 798, 799-825, 102 S. Ct. 2157, 2160-73 (1982); *Lindsey*, 482 F.3d at 1293; *see Caraballo*, 595 F.3d at 1222.  In contrast to the search-incident-to-arrest exception, the automobile exception "allows searches for evidence relevant to offenses other than the offense of arrest,

8

and the scope of the search authorized is broader." *Gant*, 556 U.S. at 347, 129 S. Ct. at 1721.

This Court has explained that the automobile exception authorizes a search of a vehicle if "(1) the vehicle is readily mobile; and (2) the police have probable cause for the search." *Lindsey*, 482 F.3d at 1293. For the mobility requirement, the car must simply be operational.[3] *See id.* The fact that Alston drove the Maxima to the drug deal shows that it was operational. "Probable cause, in turn, exists when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle." *Id.* (quotation marks omitted).

Here, the facts and circumstances known to the officers, construed in the light most favorable to the government, show that Alston drove from Savannah, Georgia, to Jacksonville, Florida, to purchase marijuana and cocaine, negotiated the purchase of five-and-a-half pounds of marijuana, possessed several thousands of dollars to complete the transaction, and then attempted to offer payment for the marijuana. Furthermore, in conducting the arrest of Alston's passenger, an officer observed in plain view a "wad of cash" arranged in "drug folds," which was

---

[3] The absence of exigent circumstances does not affect the validity of the search. *See United States v. Johns*, 469 U.S. 478, 484, 105 S. Ct. 881, 885 (1985) ("A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search."); *Lindsey*, 482 F.3d at 1293 n.6 ("[W]e have made it clear that the requirement of exigent circumstances is satisfied by the 'ready mobility' inherent in all automobiles that reasonably appear to be capable of functioning." (internal quotation marks omitted)).

consistent with what he had seen in other drug investigations.  Given the reason for which Alston and his passenger were at the flea market, the officers reasonably could have concluded that Alston and his passenger intended to use the money to purchase drugs.

Under the totality of the circumstances, we are satisfied that probable cause existed to believe that the car, which was being used as an instrument of drug-trafficking activity, contained additional evidence of drug-trafficking activity, such as drug paraphernalia, cash, or records of drug transactions, among other things. *See, e.g.*, *United States v. Brazel*, 102 F.3d 1120, 1146-47 (11th Cir. 1997) (finding probable cause to justify a warrantless search of the vehicle because circumstances indicated that the car was used to facilitate drug offenses).

Because probable cause existed to search the vehicle for evidence of drug-trafficking activity, officers were allowed to search the areas where the two guns were found—the glove compartment and the area under the driver's seat. *See Ross*, 456 U.S. at 825, 102 S. Ct. at 2173 ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.").  Both of these places could have, and in fact did, conceal evidence of drug-trafficking activity.  *Cf. United States v. Cruz*, 805 F.2d 1464, 1474 (11th Cir. 1986) (noting that "guns are a tool of the drug trade" and that "[t]here is a frequent and overpowering connection

10

between the use of firearms and narcotics traffic").  Accordingly, we affirm the district court's denial of the motion to suppress.[4]

## IV.

In sum, the district court did not err in denying Alston's motion to suppress, and we, therefore, **AFFIRM** his convictions.

---

[4]  Because the search of Alston's car had a valid constitutional basis, we do not address whether the district court erred in finding that the search was a valid inventory search.