STATE OF MAINE                                    UNIFIED CRIMINAL DOCKET
ANDROSCOGGIN, ss.                                 DOCKET NO.: ANDCD-CR-17-141

NOV 17 '17 PM2:31
ANDRO SUPERIOR COURT

STATE OF MAINE                          )
                                        )
                                        )                    ORDER ON DEFENDANT'S
v.                                      )                    MOTION TO SUPPRESS
                                        )                    EVIDENCE
                                        )
DONNA PAGNANI,                          )
        Defendant                       )

Pending before the court is Defendant's Motion to Suppress. A hearing was held on November 7, 2017. The State presented the testimony of Officer Bryan Parker of the Auburn Police Department and a cruiser video of the incident, including the arrest and search of Ms. Pagnani's jacket and vehicle. The court has reviewed the file, the applicable case law and makes the following findings of fact and conclusions of law:

Findings of Fact

Around 12:00 p.m. on January 17, 2017, Officer Parker observed the Defendant, Donna Pagnani, driving a white 1997 Ford Escort as she was leaving the Androscoggin Superior Court. Officer Parker was familiar with Ms. Pagnani's "extensive" criminal history, including a May 2016 arrest by New Hampshire State Police for drug sales. He ran a license check on Ms. Pagnani but did not receive a response until she had driven out of sight. Officer Parker learned subsequently that Ms. Pagnani's license was suspended and she had a prior OAS conviction. Officer Parker then drove to the residence where he was "pretty sure she lived." He parked his unmarked police car and waited for her to return home.

Approximately 2 hours later, Officer Parker observed Ms. Pagnani drive by him. He also noticed a pair of sunglasses hanging from the rearview mirror of her vehicle, which constituted an "obstructed view." Saying, "Here we go," Officer Parker activated

1

his emergency lights and followed Ms. Pagnani's vehicle into the driveway of her residence.

As Ms. Pagnani got out of the car, Officer Parker approached and advised her that her license was suspended for failure to pay a fine. Ms. Pagnani said she was not under suspension and that she had "paid the fine." She provided Officer Parker with her license, registration and insurance, while attempting to contact the violations bureau to verify that she had paid the fine.

Officer Parker ran another license check and confirmed that Ms. Pagnani's license was suspended. In addition to telling her that her license was suspended and while she continued to reach the violations bureau, Officer Parker asked her about the New Hampshire case. Ms. Pagnani responded that it had been dropped. He asked her how much weight she had been charged with and she said that did not matter because the case was dropped. Officer Parker asked Ms. Pagnani if she had any drugs or weapons on her person or in her car. She said she had nothing. He asked for her consent to search the vehicle and she said no. Officer Parker then told Ms. Pagnani she was under arrest for operating after suspension with a prior.

Ms. Pagnani did not willingly submit to arrest, saying she had "done nothing wrong." She asked for time to speak with the violations bureau. On several occasions, Officer Parker told her to put the phone down. She called to her mother, who was presumably inside the residence, to provide the proof of payment.[1] She called out for a neighbor, stating that she was being harassed and falsely arrested. She started going towards the house and Officer Parker told her not to move away. She continued walking,

---

[1] Ms. Pagnani later told the officer that her mother was at work and that she had to pick her up.

took off her jacket, placed it on a seat on the porch, and sat down on it. Ms. Pagnani was in a sleeveless blouse and it was 34 degrees out.

Officer Parker called for backup. When the other officers arrived, they helped place Ms. Pagnani in handcuffs and put her in the back of Officer Parker's vehicle. Ms. Pagnani asked what she was being arrested for and Officer Parker responded that she was being arrested for operating after suspension.

Once Ms. Pagnani was handcuffed and secured in the vehicle, Officer Parker conducted a warrantless search of the jacket she had removed and left on the porch. In it he found a small loose rock. Based on his training, education and experience, he believed it was cocaine base. He then tried opening the doors to Ms. Pagnani's car but they were locked.

Officer Parker asked one of the officers if Ms. Pagnani had the keys to her car in her hand, which she did. He advised the other officers that he had found cocaine base in her jacket and was going to "toss the car." They physically took her keys from her. Officer Parker then searched the vehicle. One of the other officers looked around the porch, in the trunk of the vehicle, and the area immediately around the residence.

During Officer Parker's search of the vehicle he found Ms. Pagnani's purse. Underneath it, he located a sandwich baggie containing 5 total baggies of a tan/brown powder. Based on his training, education and experience, Officer Parker believed the tan/brown powder was heroin.

Ms. Pagnani contends that the warrantless search of her jacket and vehicle was unreasonable and asks this court to suppress the items seized in accordance with the Fourth Amendment of the United States Constitution and the Maine Constitution.

The State asserts that the search of Ms. Pagnani's personal property, car and the area around the residence was done incident to arrest and was, therefore, reasonable.

Conclusions of Law

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const., amend. IV. The Maine Constitution similarly provides that "[t]he people shall be secure in their persons, houses, papers and possessions from all unreasonable searches and seizures...." Me. Const. art. I, § 5. The Fourth Amendment requires that all searches by law enforcement officers be reasonable. To protect reasonable expectations of privacy, the law has a decided preference that police searches be conducted pursuant to search warrants.

"[T]he general requirement that a search warrant be obtained is not lightly to be dispensed with...." *Chimel v. California*, 395 U.S. 752, 762 (1969). Warrantless searches "are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). When a defendant challenges a warrantless search, and seeks the suppression of the evidence seized, the government bears the burden of demonstrating that the search was lawful. *See State v. Michael M.*, 2001 ME 92, ¶ 6, 772 A.2d 1179.

The United States Supreme Court has recognized a "few specifically established and well-defined exceptions" to the search warrant requirement, including searches incident to arrest, consent searches, the emergency exception, the motor vehicle exception and the inventory exception. *See generally Michigan v. Long*, 463 U.S. 1032 (1983); *United States v. Ross*, 456 U.S. 798 (1982); *South Dakota v. Opperman*, 428 U.S. 364 (1976); *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973); *Schmerber v. California*, 384 U.S. 757 (1966).

The search incident to arrest exception as enunciated by the Court in *Chimel v. California* derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations and is limited to areas within the arrestee's

4

"immediate control." *Chimel*, 395 U.S. at 762-63. Failure to follow the rules governing searches incident to arrest can result in the suppression of evidence under the exclusionary rule, which exists to deter police misconduct when it is purposeful or flagrant. *Davis v. United States*, 564 U.S. 229, 237-38 (2011).

In *Arizona v. Gant*, the United States Supreme Court established a two-part rule detailing when an area may be searched (the prerequisite to the search). Specifically, in the case of an arrest of a driver, passenger, or recent occupant of a motor vehicle, the officer may, incident to that arrest, search the entire passenger compartment of a motor vehicle and the containers therein (1) if the arrestee is within reaching distance of the vehicle during the search (*Gant* officer-safety justification) or (2) if the officer has reason to believe that the vehicle contains "evidence relevant to the *crime of arrest*." (*Gant* evidence-preservation justification). *See Gant*, 556 U.S. at 343 (emphasis added). The *Gant* test is an either/or proposition, meaning that only one prong of the test must be satisfied to be in compliance with the holding in *Gant*.

The facts in *Gant* are similar to the facts of this case. Tucson police officers arrested Rodney Gant for driving with a suspended license. *Id* at 344. After he was handcuffed and locked in the back of a patrol car, officers searched his car and found cocaine in a jacket located on the backseat. *Id* at 336. Gant moved to suppress the cocaine found on the grounds that the warrantless search of his car violated the Fourth Amendment. *Id*. The Arizona Supreme Court held that the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement did not justify the search in this case. *Id* at 344.

The U.S. Supreme Court agreed. Under the facts of the case, Gant was not within reaching distance of the vehicle at the time of the search (he was handcuffed and locked inside a police car), and there was no reason to believe the car contained evidence of the

crime for which he was arrested (driving with a suspended license). *Id.* Therefore, the search of his car violated the Fourth Amendment and the contraband discovered during the search was suppressed. *See id.*

In the matter pending before the court, there is no dispute that Ms. Pagnani was handcuffed and secured in the back seat of Officer Parker's vehicle at the time of the search. The area searched, including the jacket on the porch, the car, and the general area around the residence, was not within the "conceivable control" of the suspect, Ms. Pagnani. Because there was no reason to believe that Ms. Pagnani was within reaching distance or otherwise able to access the passenger compartment of the vehicle or her jacket on the porch, the court finds and concludes that the search incident to arrest was not justified under the first prong of *Gant* – the officer-safety justification.

The second prong of the *Gant* test permits the police to search the passenger compartment of a motor vehicle when "it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 346. The application of the second prong is not as straightforward as the State would have this court believe. In fact, courts have struggled with the language of this part of the test and have come up with myriad interpretations. A significant number of courts have concluded that the second prong of *Gant* hinges on the "nature of the offense" involved in the arrest and "not some independent evidence that gives rise to a belief that the particular vehicle contains evidence." Kenneth A. Myers, *Searches of Motor Vehicles Incident to Arrest in a Post-Gant World*, FBI LAW ENFORCEMENT BULLETIN (April 1, 2011), https://leb.fbi.gov/articles/legal-digest/legal-digest-searches-of-motor-vehicles-incident-to-arrest-in-a-post-gant-world. Most routine traffic offenses fall outside the second prong of *Gant. Id.* However, courts have justified searches incident to arrest under the "nature of the offense" test for offenses such as theft, drug offenses, illegal firearms, driving under the influence, and fraud and abuse. *Id.*

6

In this case, Officer Parker saw Ms. Pagnani driving. Believing she was under suspension, he ran her license. He confirmed she was under suspension for failure to pay a fine. When he saw Ms. Pagnani's vehicle, he turned on his emergency lights and followed her into her driveway. He told her that her license was suspended, which she denied. She tried to call the violations bureau to verify that she had paid the fine. He asked her questions about the New Hampshire drug case; how much weight she was charged with; and, he asked if could he search her vehicle. She said they dropped the charges and she refused to give consent to search her car. Officer Parker placed Ms. Pagnani under arrest for operating after suspension for failure to pay a fine and for having a prior conviction.

The court finds that the facts of this case and the totality of the circumstances, including the Officer's familiarity with Ms. Pagnani, her extensive criminal history and the New Hampshire charges were not sufficient to give Officer Parker reason to believe that her jacket and the vehicle would contain evidence that was relevant to the crime of arrest – *driving after suspension*.

There was more than enough time and manpower available to secure a valid search warrant for the purpose of searching Ms. Pagnani's jacket and car.

Defendant's Motion to Suppress is GRANTED.

Dated: November 17, 2017

MaryGay Kennedy, Justice
Maine Superior Court

7