**Affirm and Opinion Filed August 30, 2024**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-23-00356-CR**

**JORGE ANTONIO RUIZ-MOZQUEDA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-83181-2022**

## MEMORANDUM OPINION

Before Justices Molberg, Nowell, and Kennedy
Opinion by Justice Molberg

A jury found appellant Jorge Antonio Ruiz-Mozqueda guilty of continuous sexual abuse of a young child, and the trial court assessed punishment at thirty years' confinement. In this appeal, he argues the trial court erred in (1) denying his motion to suppress in which he argued his cell phone was seized in violation of the Fourth Amendment, and (2) overruling his objection to the complainant's testimony being read to the jury in response to a jury note. For the reasons explained below, we reject appellant's arguments and affirm the trial court's judgment in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

## Background

Because appellant raises issues implicating only parts of the record, we will accordingly limit our discussion of the procedural history of the case and evidence presented at trial. L.U. made an outcry of sexual abuse against her friend's father, appellant, alleging he touched her genitals on multiple occasions and, once, took a picture of her genitals using his cell phone. Detective Olga Chavez testified that, after reviewing L.U.'s forensic interview at the Children's Advocacy Center, she determined L.U. had articulated an offense committed by appellant. Based on what L.U. reported, Detective Chavez also had reason to believe appellant's cell phone would corroborate the reported offense. She secured an arrest warrant for appellant and was notified when he was arrested; she responded to the scene of the arrest and was made aware two cell phones were seized from appellant's truck during the arrest.

Detective Wade Hornsby testified, among other things, he is certified to do cell phone extractions and digital forensics. With respect to this case, Detective Hornsby said he was present at appellant's house when a search warrant was executed and collected devices from the house, including a laptop, iPad, and appellant's son's cell phone. After Detective Hornsby testified that he conducted three cell phone extractions in this case, defense counsel requested to approach the bench. The parties had an off-record bench conference. Back on the record, the trial court stated, "Let the record reflect during the sidebar the defense attorney realized

he had not reviewed to determine whether or not there were search warrants granted for each of the cell phones that the State is going to introduce into evidence." Defense counsel then objected as follows:

> We do have an objection to any evidence from the cell phone due to the nature of the seizure. The phone was not -- there was no search warrant for the vehicle. [Appellant] was in a vehicle that was stopped and an arrest warrant was served on him. There was no way to determine whether these phones were his or not. At the time of arrest, they got a -- they had a search warrant for the . . . . I mean, an arrest warrant for him. They did not get a search warrant for him. Because it wasn't in his possession, there were multiple phones in the car, multiple passengers, we would object to any evidence coming in due to the unreasonable seizure of the devices themselves.

Defense counsel also stated:

> We're objecting to the seizure of the phones as unlawful. There was a warrant to search the phones, but only due to the unlawful seizure is the only reason that the law enforcement had the phone. So we would object to any introduction of testimony in violation of -- about an extraction of these phones violating the Fourth Amendment of the United States Constitution; Articles 1, Section 9 of the Texas Constitution; and 38.23 of the Texas Code of Criminal Procedure.

The State responded that there was cause to seize the phone given that Detective Chavez had information the phone was used in the offense, and generally argued the seizure was appropriate under either the search-incident-to-arrest or attenuation-of-the-taint doctrine.

The trial court noted there was "no evidence on the record for me to make a decision yet." However, in arguing to the court, the parties agreed on certain facts relating to the warrants: appellant was arrested pursuant to an arrest warrant, which

was supported by a probable-cause affidavit stating appellant used a cell phone during the commission of the offense; a search warrant for appellant's home authorizing seizure of electronic devices was issued before appellant was arrested; and a search warrant issued after the seizure of the cell phones authorizing their search and they were not searched until the warrant issued.

Additionally, for purposes of the suppression issue, the trial court reviewed video of the arrest taken from the arresting officer's body camera. In the video, appellant's truck can be seen pulled over on the side of a residential street. The arresting officer approaches appellant's truck, reviews appellant's identification, and then asks appellant to step out of the vehicle. The officer informs appellant he is under arrest and places him in handcuffs. Standing just outside the open driver side door of the truck, the officer sees two phones on the center console and asks appellant whether they are his. Appellant responds that the "little one" was his. The officer states that they are both being seized and removes them from the truck. The officer tells appellant the warrant is for aggravated sexual assault of a child[1] and, later, when appellant is being placed in the patrol car, he tells appellant, "The phones and stuff are being seized for evidence." The officer also tells another officer present at the scene to call Detective Chavez.

---

[1] The record reflects appellant was later indicted for continuous sexual abuse of a young child, the offense on which he was tried and found guilty.

The trial court denied appellant's motion to suppress, and appellant asked for a running objection to "any evidence from those two devices that we believe were seized unlawfully from his vehicle." The trial court later admitted photographs of L.U. found on one of the phones taken from appellant's truck, and L.U.'s mother testified she believed the photographs depicted L.U.'s genitals, while appellant recalled the sexual assault examiner, Dr. Kristen Reeder, who testified she did not believe the genitals depicted were L.U.'s.

## Discussion

### *Cell phone seizure*

In his first issue, appellant argues the trial court abused its discretion in denying his motion to suppress evidence obtained from his cell phone, which he argues was seized[2] in violation of the Fourth Amendment and article I, § 9 of the Texas Constitution.

We review a trial court's ruling on a motion to suppress for abuse of discretion, giving almost complete deference to the trial court's determination of historical facts, especially if based on an assessment of credibility and demeanor. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). The same deference is afforded the trial court's rulings on application of law to fact questions and to mixed

---

[2] The parties agree the contents of the cell phone were not searched until after the police procured a warrant to search the phone's contents. *See Riley v. Cal.*, 573 U.S. 373, 401 (2014) (concluding that, when a cell phone is seized incident to arrest, a warrant is generally required before a search of the phone's contents). Thus, the only question before us relates to the initial seizure of the phone.

questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor. *Id.* For mixed questions of law and fact that do not fall within that category, a reviewing court conducts a de novo review. *Id.*

The Fourth Amendment protects against unreasonable searches and seizures conducted by governmental officials.[3] U.S. CONST. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007); *State v. Gonzales*, 676 S.W.3d 261, 265 (Tex. App.—Dallas 2023, no pet.). Generally, a warrantless search or seizure is per se unreasonable under the Fourth Amendment unless it falls within a recognized exception to the warrant requirement. *Igboji v. State*, 666 S.W.3d 607, 613 (Tex. Crim. App. 2023); *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003).

One such exception is a search incident to a lawful arrest. *See Arizona v. Gant*, 556 U.S. 332, 338 (2009). Under this exception, once the occupant of a vehicle is lawfully arrested, the Fourth Amendment may permit a warrantless search of the vehicle's passenger compartment. *State v. Sanchez*, 538 S.W.3d 545, 548 (Tex. Crim. App. 2017). Such a search is allowed (1) when the arrestee is unsecured and the area of the vehicle is within his immediate control, or (2) when it is reasonable to believe that evidence of the offense of arrest might be found in the

---

[3] The Texas Constitution similarly protects against unreasonable searches and seizures by government officials. TEX. CONST. art. I, § 9; *Quaschnick v. State*, No. 05-21-00443-CR, 2024 WL 549045, at *7 (Tex. App.—Dallas Feb. 12, 2024, pet. ref'd) (mem. op., not designated for publication). Because article I, § 9 provides the same protection against unreasonable seizures as the Fourth Amendment, we will not address the provisions separately. *See Moss v. State*, No. 05-22-00949-CR, 2023 WL 4247367, at *2 n.1 (Tex. App.—Dallas June 29, 2023, no pet.) (mem. op., not designated for publication).

vehicle. *Id.*; *see also Gant*, 556 U.S. at 351 ("Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."); *Moss*, 2023 WL 4247367, at *3.

Our determination of reasonableness is measured "in objective terms by examining the totality of the circumstances" and is based "upon commonsense judgments and inferences about human behavior." *State v. Ogeda*, 315 S.W.3d 664, 667 (Tex. App.—Dallas 2010, pet. ref'd) (quoting *Illinois v. Wardlow*, 528 U.S. 119 (2000)). An officer's subjective intentions play no role in our analysis and "[t]he fact that the officer does not have the state of mind providing the legal justification for her action does not invalidate the action taken, so long as the circumstances, viewed objectively, justify it." *Id.*

Evaluation of an alleged Fourth Amendment violation generally requires us to make "an objective assessment of an officer's actions in light of the facts and circumstances then known to him." *Id.* (citing *Scott v. United States*, 436 U.S. 128, 137 (1978)). However, under the "collective knowledge" doctrine, the cumulative information known to multiple, cooperating officers may be considered in assessing reasonableness. *State v. Duran*, 396 S.W.3d 563, 569 n.12 (Tex. Crim. App. 2013); *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987).

Here, the evidence before the trial court showed that Detective Chavez procured a warrant for appellant's arrest for the offense of aggravated sexual assault of a child, and she had reason to believe appellant's cell phone contained evidence of the offense after reviewing the complainant's interview; several officers executed the warrant, which was supported by an affidavit describing, among other things, the use of appellant's cell phone during the commission of the offense; shortly after handcuffing appellant, the arresting officer seized appellant's cell phones, which were taken from the top of the truck's center console, where they were visible to the officer standing just outside the truck; the arresting officer seized the phones "for evidence"; and multiple officers—including Detective Chavez, who was called and responded to the scene of the arrest—cooperated in the arrest.

Given the totality of the circumstances, and the cumulative information known to the police involved in the arrest, we conclude it was reasonable for the police to believe the seized phones constituted evidence of the offense. Accordingly, we conclude the cell phones were lawfully seized in accordance with the search-incident-to-arrest exception to the warrant requirement. *Cf. Jackson v. State*, No. 04-18-00406-CR, 2019 WL 3431763, at *3 (Tex. App.—San Antonio July 31, 2019, no pet.) (mem. op., not designated for publication) (concluding cell phones were lawfully seized pursuant to search-incident-to-arrest exception to warrant requirement when police executed arrest warrant for aggravated sexual assault of

child when police and had "specific information that [the appellant's] cell phones contained text messages related to the aggravated sexual assault of a child").

Although here, unlike in *Jackson*, for example, there is no direct evidence that Detective Chavez communicated her reasons to believe the cell phones could constitute evidence of the offense to the arresting officer who seized the phones, "evidence of communication between officers is not always a necessary requirement to apply the collective knowledge doctrine." *State v. Martinez*, 569 S.W.3d 621, 627 (Tex. Crim. App. 2019). Instead, there is here evidence of cooperation between Detective Chavez and the officers, including the detective's procurement of the arrest warrant, the officers' execution of that warrant, and the detective ultimately being called by the officers and responding to the scene of the arrest to assist. *Cf. id.* (concluding "the sum of the information known to the cooperating officers—their cumulative information—should be considered" when the officers cooperated in the arrest although there was no evidence the officers communicated). Appellant's first issue is overruled.

*Article 36.28*

In his second issue, appellant contends the trial court abused its discretion in having the court reporter read portions of the testimony of the complainant to the jury during its deliberations. In the trial of a criminal case if the jury disagree as to the statement of any witness, they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the

particular point in dispute, and no other. TEX. CODE CRIM. PROC. art. 36.28. This statute seeks to balance concerns that the trial court not comment on the evidence with the need to provide the jury the means to resolve any factual disputes it may have. *Howell v. State*, 175 S.W.3d 786, 790 (Tex. Crim. App. 2005). The court of criminal appeals has summarized the law pertinent to article 36.28 as follows:

> When the jury asks that certain testimony be re-read, the judge must first determine if the request is proper under Article 36.28. A simple request for testimony is not, by itself, a proper request under Article 36.28. Instead, the jury's "request must reflect that the jurors disagree about a specified part of the testimony." Article 36.28 does not require that the jury use any particular words to express its disagreement. Whether a disagreement exists will depend upon the particular facts of each case, and the judge's inference of a dispute need only have some basis other than mere speculation. After determining that the jury's request is proper under Article 36.38, the trial court must then interpret the communication; decide, in its discretion what sections of the testimony will best answer the query; and limit the testimony accordingly. . . . On appeal, we review the trial judge's conclusion as to whether there is a factual dispute between the jurors for an abuse of discretion. We apply this same standard in reviewing the trial court's selection of testimony responsive to the jury's request.

*Balderas v. State*, 517 S.W.3d 756, 797–98 (Tex. Crim. App. 2016) (citations and footnotes omitted).

Sometime after retiring to deliberate, the jury sent a note, seeking, among other things, a transcript of the complainant's testimony. The trial court responded by informing the jury it could have testimony read only if jurors disagreed as to the statement of a witness. The jury then sent a second note stating jurors disagreed about the complainant's testimony as to "when the abuse began, to confirm the type

of abuse, and the timing of it." An off the record discussion occurred to determine which portions of the record should be read to the jury. Back on the record, the trial court asked whether the parties objected to the portions of the record discussed off the record being read. The State did not object, but defense counsel objected, stating that because the note referred to "abuse," the court would be "making a fact-finding decision" that particular testimony selected to be read by the court described sexual abuse. The trial court overruled appellant's objections.

The jury entered the courtroom and the court reporter read two portions of the direct examination of L.U. The first portion reads as follows:

> QUESTION: "I know you talked about how [J.R.'s] dad, [appellant], seemed nice. He would take you and [J.R.] places. Was there a time that that kind of changed or shifted for you?"
>
> ANSWER: "Yes."
>
> QUESTION: "Okay. When was the first time that you noticed something shifted or changed?"
>
> ANSWER: "Like the exact day or like –"
>
> QUESTION: "Was there an exact date that you remember or was there around an age that you remember something changing?"
>
> ANSWER: "The age would have been around, like, seven or eight."

The second portion of testimony read to the jury read as follows:

> QUESTION: "Okay. So that was kind of the first thing that you remember something -- him doing something that made you uncomfortable. When was the next time something that he did that was -- that you thought was weird or made you uncomfortable?"
>
> ANSWER: "He, like, started coming into [J.R.'s] bedroom and started touching me."
>
> QUESTION: "Okay. And was that still when you were seven or eight or was that another time?"

–11–

ANSWER: "I think it was still when I was around seven or eight."

Appellant argues the second note "merely generalizes they have a disagreement on L.U.'s testimony when the abuse began. The note does not indicate any specific or particular statement on what the jury disagrees that L.U. testified about regarding when the abuse began. The note does not specify whether they disagree about the age of when the abuse occurred, a date when it occurred, or time of day when it occurred." We disagree.

The jury's note stated the jurors disagreed about L.U.'s testimony as to "when the abuse began." The testimony the trial court instructed the court reporter to read back to the jury related directly to that disagreement, including L.U.'s testimony that things changed with appellant when she was seven or eight and that appellant began touching her when she "was around seven or eight." Given this, we conclude the trial court did not abuse its discretion by instructing the court reporter to read back this testimony to the jury. *See Balderas*, 517 S.W.3d at 797–98. Appellant's second issue is overruled.

## Conclusion

Having overruled appellant's two issues, we affirm the trial court's judgment.

/Ken Molberg/

KEN MOLBERG

JUSTICE

Do Not Publish
Tex. R. App. P. 47.2(b)
230356F.U05

–12–



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JORGE ANTONIO RUIZ-MOZQUEDA, Appellant

No. 05-23-00356-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas Trial Court Cause No. 416-83181-2022.
Opinion delivered by Justice Molberg. Justices Nowell and Kennedy participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 30th day of August, 2024.